The ELK HORN COAL
CORPORATION,
Appellant,

v.

CHEYENNE RESOURCES, INC.,
and PC & H Construction,
Inc., Appellees.

No. 2002–SC–743–DG.

Supreme Court of Kentucky.

May 19, 2005.

Virginia Hamilton Snell, Deborah H. Patterson, Louisville, Richard C. Ward, Lexington, Wyatt, Tarrant & Combs, Counsel for Appellant.

Bruce E. Cryder, Greenebaum, Doll & McDonald, David Austin French, Lexington, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

Appellant unsuccessfully sought discretionary review in this Court of a decision of the Court of Appeals affirming a $9.5 million judgment awarded against it. Appellant had stayed enforcement of the judgment during the appellate process by posting a supersedeas bond, and because the discretionary review motion further delayed enforcement of the judgment, the trial court, pursuant to KRS 26A.300, assessed as additional damages a penalty equal to 10% of the superseded judgment. Appellant now appeals the 10% penalty, presenting us with a single issue: the constitutionality of KRS 26A.300. We hold that KRS 26A.300 violates the equal protection provisions of both the Kentucky and United States Constitutions and that it also violates the separation of powers provisions of the Kentucky Constitution. We thus vacate that part of the judgment imposing the 10% penalty.

## II. BACKGROUND

The genesis of this appeal is a coal-mining contract between Appellant, Elk Horn Coal Corporation, and Appellees, Cheyenne Resources, Inc. and PC & H Construction, Inc. Appellees filed an action against Appellant alleging that Appellant fraudulently induced Appellees to enter into a coal lease and further alleging that Appellant was guilty of wrongfully terminating or breaching the lease. Following a jury trial and verdict, Appellees were awarded a judgment against Appellant, totaling $9.5 million. In addition to the principal amount awarded, the judgment provided that the award would bear prejudgment interest of 8% from the date the action was originally filed, and that the judgment itself would bear post-judgment interest of 12%.[1] Appellant appealed as a matter of right[2] to the Court of Appeals and stayed enforcement of the judgment during the appellate process by posting a supersedeas bond. The Court of Appeals affirmed in a two-to-one split decision. Appellant then sought discretionary review in this Court, which was denied by an

---

1. KRS 360.040 ("A judgment shall bear twelve percent (12%) interest compounded annually from its date.").

2. KY. CONST. § 115.

evenly divided court, three-to-three (with one justice not sitting).

Thereafter, Appellees moved the trial court to enforce its judgment against Appellant's surety on the supersedeas bond. As part of its motion, Appellees requested that the trial court also assess against Appellant pursuant to KRS 26A.300 a penalty of 10% of the amount of the original judgment since Appellant delayed the case beyond the first appeal when it moved this Court to grant discretionary review of the Court of Appeals's decision. Appellant responded to Appellees' motion by challenging the constitutionality of KRS 26A.300. Without specifically addressing the constitutionality of KRS 26A.300, the trial court awarded Appellees a judgment of $14,500,000, the bond amount, against Appellant's surety. However, the total judgment, which included the original award, prejudgment and post-judgment interest thereon, and the 10% penalty of $950,000 imposed under KRS 26A.300, exceeded the bond by approximately $145,000 because of the penalty. Appellant itself paid this additional sum directly to Appellees and repaid its surety the money paid to Appellees on Appellant's behalf. Appellant appealed to the Court of Appeals, challenging the constitutionality of KRS 26A.300 and the penalty assessed thereunder. The Court of Appeals affirmed in a unanimous opinion, and we granted discretionary review.

### III. ANALYSIS

#### A. Equal Protection

Appellant is entitled to equal protection of the law under the 14th Amendment to the United States Constitution and under Sections 1, 2, and 3 of the Kentucky Constitution. Equal protection of the law essentially means "that all persons similarly situated should be treated alike."[3] Appellant contends that KRS 26A.300 violates the Equal Protection provisions of the Constitutions because the statute "is not rationally related to any legitimate state interest" and it is arbitrary in assessing an appeal penalty in second appeals only on unsuccessful appellants from superseded money judgments. KRS 26A.300 provides:

(1) When collection of a judgment for the payment of money has been stayed as provided in the Rules of Civil Procedure, there shall be no damages assessed on the first appeal as a matter of right contemplated by Section 115 of the Constitution of Kentucky.

(2) When collection of a judgment for the payment of money has been stayed as provided in the Rules of Civil Procedure pending any other appeal, damages of ten percent (10%) on the amount stayed shall be imposed against the appellant in the event the judgment is affirmed or the appeal is dismissed after having been docketed in an appellate court.

(3) Similar damages of ten percent (10%) shall be imposed when a petition for writ of certiorari, petition for rehearing, or other petition which stays collection of a judgment for the payment of money is denied by an appellate court under circumstances not constituting a first appeal under subsection (1) of this section.

(4) No additional penalty shall be imposed upon a party as a consequence of a review subsequent to a petition or a second appeal.

---

**3.** *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985).

(5) Damages imposed under subsection (2) or (3) of this section shall not be payable and shall be void if the decision of the trial court awarding the payment of money is ultimately reversed.

█ Statutory provisions providing for a penalty if a money judgment[4] is affirmed or dismissed on appeal have been part of the law of this Commonwealth since its infancy.[5] But the long existence of an appeal penalty as a part of the law of this state does not insulate it from a constitutional challenge, although KRS 26A.300, like all statutes, is presumed to be valid.[6]

With the adoption of the Judicial Article,[7] effective January 1, 1976, Kentucky's Constitution was amended to allow one appeal as a matter of right from a judgment.[8] Along with other enactments implementing the Judicial Amendment, the Legislature enacted KRS 26A.300,[9] which narrowed the class of cases for which an appeal penalty was allowed, but continued in effect an appeal penalty that was first enacted when the Legislature prescribed the rules of practice and procedure for Kentucky's Courts,[10] as well as the appellate jurisdiction of our predecessor, the Court of Appeals.[11] Under the law in effect before the enactment of KRS 26A.300, a 10% penalty was recoverable in *all* cases upon affirmance or dismissal of *any* appeal from a superseded judgment for the payment of money.[12] KRS 26A.300, however,

**4.** *See* BLACK'S LAW DICTIONARY 848 (7th ed.1999) (defining "money judgment" as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief").

**5.** *Phillips v. Green*, 288 Ky. 202, 155 S.W.2d 841, 843 (1941) ("It is of interest to note that the first act establishing the Court of Appeals, in 1792, provided that an appellant should give bond 'to the appellee for the due prosecution of an appeal,' the penalty to be 'a reasonable sum in the discretion of the court.' It was further provided that if the judgment should be affirmed the appellant should pay the appellee 10 per cent. on the sum due thereby and his costs.").

**6.** *Commonwealth v. Halsell*, 934 S.W.2d 552, 554 (Ky.1996) ("A well-established principle of constitutional law is that a statute carries a presumption of constitutionality.").

**7.** KY. CONST. §§ 109–124.

**8.** KY. CONST. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court ....").

**9.** 1976 Ky. Acts ch. 59, § 1.

**10.** *Hoskins v. Maricle*, 150 S.W.3d 1, 32–34 (Ky.2004) (Keller, J. concurring in part, dissenting in part) (discussing the promulgation of the civil and criminal rules prior to the adoption of the Judicial Amendment).

**11.** KY. CONST. § 110 (repealed effective January 1, 1976, with the adoption of the Judicial Amendment) ("The court of appeals shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law."); *Cullins v. Williams*, 156 Ky. 57, 160 S.W. 733, 736 (1913) ("[T]he right of appeal is purely a matter of legislative discretion...."); *Burton v. Mayer*, 274 Ky. 263, 118 S.W.2d 547, 549 (1938) ("So long as the rules of practice fixed by the Legislature accord with the proper and effective administration of justice, they should be, and they are, followed to the letter."); *Federal Land Bank of Louisville, Ky. v. Crombie*, 258 Ky. 383, 80 S.W.2d 39, 40–41 (1935) (discussing the right of the Legislature under our Constitution to prescribe rules of procedure and practice).

**12.** KRS 21.130 (repealed 1976 by 1976 Ky. Acts ch. 59, § 3) ("Upon the affirmance of an appeal, or the dismissal of an appeal after it has been docketed in the Court of Appeals, where the appeal is from a judgment for the payment of money, the collection of which, in whole or in part, has been superseded, as provided in the Rules of Civil Procedure, 10% damages on the amount superseded shall be awarded against the appellant."). For the rule prior to enactment of KRS 21.130, see Code of Practice in Civil Cases § 764 (amended and transferred to Kentucky Revised Stat-

deleted the penalty "on first appeals as a matter of right contemplated by Section 115 of the Constitution of Kentucky." Additionally, a petition for rehearing of a first appeal does not trigger the penalty.[13] But since a discretionary review motion "stays collection of a judgment ... under circumstances not constituting a first appeal," [14] KRS 26A.300's penalty is assessed when a motion for discretionary review is denied by this Court.[15] When applicable, the assessment of the penalty is automatic and mandatory.[16] Accordingly, the trial court in this case properly applied the unambiguous and mandatory language of KRS 26A.300 and assessed a 10% penalty against Appellant, leaving unanswered, however, the question regarding the constitutionality of the statute.

■■■ The ten percent penalty provisions of KRS 26A.300 apply *only* to unsuccessful appellants in second appeals *from superseded money judgments.* Notably, a penalty is not assessed against other unsuccessful appellants in second appeals, e.g., unsuccessful plaintiff-appellants, unsuccessful defendant-appellants who do not supersede a money judgment awarded against them, and unsuccessful appellants from non-money judgments. Clearly KRS 26A.300 does not treat all unsuccessful appellants in second appeals the same, and, as such, it is discriminatory. But the state may discriminate in certain matters if there is a rational basis for such discrimination: "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." [17] Thus, since in the present case no fundamental right is at stake and no "suspected class" is implicated, KRS 26A.300 must be

utes by 1952 Ky. Acts ch. 84, §§ 1, 35), which provided: "Upon the affirmance of, or the dismissal of an appeal from, a judgment for the payment of money, the collection of which, in whole or in part, has been superseded ..., 10 per cent damages of the amount superseded shall be awarded against the appellant."

13. *Ash v. Security Nat. Ins. Co.,* 574 S.W.2d 346, 351 (Ky.App.1978) ("We believe that the provision of the Constitution takes precedence over the statute and that damages under KRS 26A.300 do not accrue when a petition for rehearing has been filed in this court.").

14. *Wells v. Southern Ry. Co.,* 633 S.W.2d 406, 408 (Ky.1982) ("[A]lthough not an appeal, the motion for discretionary review filed by the administratrix of the estate of David L. Wells presents circumstances not constituting a first appeal. The facts of the subject action fit the provisions of subsection (3) and the 10% penalty applies.").

15. *Id.; accord Coomer v. Gray,* 750 S.W.2d 424, 427 (Ky.1988) ("Gray took the additional step of seeking review by this Court and his motion was denied. His action therefore delayed Coomer's access to sums of money to which he had been adjudged entitled. Gray's motion for discretionary review was at his peril."); *accord Fred Clements Heating and Air Conditioning Co. v. Janes,* 576 S.W.2d 280, 281 (Ky.App.1979) ("[D]amages under K.R.S. 26A.300 are properly awarded when a motion for discretionary review is denied."); CR 76.20(9)(a) ("If the [discretionary review] motion is denied the decision shall stand affirmed, and if a supersedeas bond has been executed, damages for delay shall be recoverable pursuant to KRS Chapter 26A.").

16. *Ash v. Security Nat. Ins. Co.,* 574 S.W.2d 346, 348 (Ky.App.1978) ("Kentucky also imposed mandatory damages under former KRS 21.130. Even with the enactment of KRS 26A.300, damages are automatically conferred upon the affirmance or dismissal of appeals other than the first appeals."); *Watts v. Laboratory Corp. of America,* 139 S.W.3d 534, 535 (Ky.App.2004).

17. *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

upheld "if there is a 'rational basis' for the classification."[18] But, as the United States Supreme Court made clear in *Lindsey v. Normet*,[19] "arbitrary and irrational" discrimination violates the Equal Protection Clause even under the rational-basis standard of review.[20]

■ The primary, if not the sole purpose of KRS 26A.300's penalty provisions is to prevent frivolous appeals:

The legislative policy underlying enactment of statutes imposing damages for delay is well-stated in *Phillips v. Green*, 288 Ky. 202, 155 S.W.2d 841, 843 (1941), as follows:

What is denominated "damages" on a supersedeas bond is not strictly so, for it is at the same time a penalty. "It is a penalty or tax imposed by legislative enactment upon the unsuccessful litigant for having delayed the litigation, and for having kept the successful litigant from sooner collecting his debt— a panacea, as it were, for the law's delay. *It is not laid upon the litigant because of any wrong done, or duty violated, but for the sole purpose of preventing useless and frequently vexatious delays in the termination of litigation. Some means had to be adopted that would tend to put an end to useless appeals, which would more frequently than otherwise be brought for the purpose of delay and annoyance.* To meet this necessity, the Legislature passed the act imposing upon the unsuccessful appellant from a judgment for the payment of money a penalty in the shape of damages, equal to 10 per cent. of the judgment appealed from."[21]

Penalty statutes, like KRS 26A.300, are not intended to compensate an appellee for delay in receiving a money judgment; rather, such statutes are intended to discourage frivolous appeals.[22] And although an unsuccessful appeal where a supersedeas bond has been posted will necessarily result in delay in the collection of a money judgment, post-judgment interest— "twelve percent (12%) interest compounded annually"[23] in Kentucky—more than adequately compensates for the delay.[24]

In *Lindsey*, the United States Supreme Court addressed the constitutionality of Oregon's Forcible Entry and Wrongful Detainer ("FED") Statute that required tenants challenging eviction proceedings to post a surety bond of twice the amount of

18. *Preston v. Johnson County Fiscal Court*, 27 S.W.3d 790, 795 (Ky.2000) (citing *General Motors Corp. v. Tracy*, 519 U.S. 278, 311, 117 S.Ct. 811, 830, 136 L.Ed.2d 761 (1997)); *accord Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 466–67 (Ky.2004).

19. 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

20. *Id.* at 79, 92 S.Ct. at 877.

21. *Coomer v. Gray*, 750 S.W.2d 424, 427 (Ky. 1988).

22. 5 AM. JUR. 2D. *Appellate Review* § 937 (1995); *cf. Watts v. Laboratory Corp. of America*, 139 S.W.3d 534, 538 (Ky.App.2004) ("[T]he purpose of KRS 26A.300 is to impose a penalty upon an appellant who pursues an unsuccessful second appeal and thereby delays the plaintiffs collection of his or her judgment.").

23. KRS 360.040 ("A judgment shall bear twelve percent (12%) interest compounded annually from its date.... Provided, that when a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%).").

24. 5 AM. JUR. 2D. *Appellate Review* § 937 (1995).

rent expected to accrue pending appellate review. The bond was forfeited to the landlord if the appeal was unsuccessful. Part of the rationale for the double bond requirement under the FED statute, like the 10% penalty here, was explained by the Oregon Supreme Court: "That the bond must provide for double the rental value was, no doubt, intended to prevent frivolous appeals for the purpose of delay. If there were not some added cost or restriction every ousted tenant would appeal, regardless of the justification."[25] The Supreme Court, after recognizing that an appeal was not constitutionally mandated, made clear that "[w]hen an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause."[26] It then concluded that Oregon's statute denied FED appellants equal protection under the law because the discrimination against the class of FED appellants was arbitrary and irrational:

> The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond. The impact on FED appellants is unavoidable: if the lower court decision is affirmed, the entire double bond is forfeited; recovery is not limited to costs incurred by the appellee, rent owed, or damage suffered. No other appellant is subject to automatic assessment of unproved damages. We discern nothing in the special purposes of the FED statute or in the

special characteristics of the landlord-tenant relationship to warrant this discrimination.

*We do not question here reasonable procedural provisions ... to discourage patently insubstantial appeals, if these rules are reasonably tailored to achieve these ends and if they are uniformly and nondiscriminatorily applied.* Moreover, a State has broad authority to provide for the recovery of double or treble damages in cases of illegal conduct that it regards as particularly reprehensible, even though posting an appeal bond by an appellant will be doubly or triply more difficult than it otherwise would be. In the case before us, however, the State has not sought to protect a damage award or property an appellee is right-fully entitled to because of a lower court judgment. Instead, it has automatically doubled the stakes when a tenant seeks to appeal an adverse judgment in an FED action. The discrimination against the poor, who could pay their rent pending an appeal but cannot post the double bond, is particularly obvious. For them, as a practical matter, appeal is foreclosed, no matter how meritorious their case may be. The nonindigent FED appellant also is confronted by a substantial barrier to appeal faced by no other civil litigant in Oregon. The discrimination against the class of FED appellants is arbitrary and irrational, and the double-bond requirement of [the FED statute] violates the Equal Protection Clause.[27]

Sixteen years later in *Bankers Life and Casualty Co. v. Crenshaw*,[28] the Supreme Court again scrutinized an appellate penal-

**25.** *Lindsey*, 405 U.S. at 76, 92 S.Ct. at 875.

**26.** *Id.* at 77, 92 S.Ct. at 876.

**27.** *Id.* at 78–79, 92 S.Ct. at 876–77 (emphasis added).

**28.** 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988).

ty statute for an equal protection violation. There, an unsuccessful defendant-appellant challenged Mississippi's appellate penalty statute "which requires unsuccessful appellants from money judgments, as well as from several other categories of judgments whose value may readily be determined, to pay an additional assessment of 15% of the judgment." [29] The Supreme Court, noting that the Mississippi Supreme Court had explained that the state interest, *inter alia,* expressed by the statute was to "discourag[e] frivolous appeals," [30] stated that the legitimacy of such an interest cannot be seriously doubted,[31] and therefore, the statute "offends the Equal Protection Clause only if the legislative means that Mississippi has chosen are not rationally related to those legitimate interests." [32]

The *Bankers Life* appellant relied on *Lindsey,* as does Appellant here, in support of its "argu[ment] that the penalty statute violates the Equal Protection Clause of the Fourteenth Amendment . . . ." [33] The *Bankers Life* Court, however, distinguished *Lindsey,* pointing out that the statute involved there "bore 'no reasonable relationship to any valid state objective,' " [34] whereas there is a rational

connection between the Mississippi "statute's objective and Mississippi's choice to impose a penalty only on appellants from money judgments or judgments the money value of which can readily be determined." [35] Accordingly, *Lindsey* was held inapplicable to Mississippi's statute:

> As *Lindsey* demonstrates, arbitrary and irrational discrimination violates the Equal Protection Clause under even our most deferential standard of review. Unlike the statute in *Lindsey,* however, Mississippi's penalty statute does not single out a class of appellants in an arbitrary and irrational fashion. First, whereas the statute in *Lindsey* singled out the narrow class of defendant-tenants for discriminatory treatment, the sweep of [Mississippi's statute] is far broader: the penalty applies both to plaintiffs and defendants, and it also applies to all money judgments as well as to a long list of judgments whose money value may readily be determined. Second, and more generally, *there is a rational connection between the statute's objective and Mississippi's choice to impose a penalty only on appellants from*

29. *Id.* at 80, 108 S.Ct. at 1651–52.

30. *Id.* at 81, 108 S.Ct. at 1652; see also *id.* at 81–82, 108 S.Ct. at 1652 ("The state interests assertedly served by the Mississippi statute were detailed by the Mississippi Supreme Court in *Walters v. Inexco Oil Co.,* 440 So.2d 268 (1983). The penalty statute, some version of which has been part of Mississippi law since 1857, 'expresses the state's interest in discouraging frivolous appeals. It likewise expresses a bona fide interest in providing a measure of compensation for the successful appellee, compensation for his having endured the slings and arrows of successful appellate litigation.' *Id.,* at 274–275. In a similar vein, the statute protects the integrity of judgments by discouraging appellant-defendants from prolonging the litigation merely to 'squeeze a favorable settlement out of an impecunious' appellee. *Id.,* at 275. Also, the

penalty statute "tells the litigants that the trial itself is a momentous event, the centerpiece of the litigation, not just a first step weighing station en route to endless rehearings and reconsiderations." *Ibid.* Finally, in part because it serves these other goals, the penalty statute furthers the State's interest in conserving judicial resources. *Ibid.*").

31. *Id.* at 82, 108 S.Ct. at 1652 ("The legitimacy of these state interests cannot seriously be doubted, and this Court has upheld statutes that serve similar interests.").

32. *Id.,* 108 S.Ct. at 1653.

33. *Id.* at 81, 108 S.Ct. at 1652.

34. *Id.* at 83, 108 S.Ct. at 1653.

35. *Id.*

*money judgments or judgments the money value of which can readily be determined.* If Mississippi wanted similarly to deter frivolous appeals from other kinds of judgments, it either would have to erect a fixed bond that bore no relation to the value of the underlying suit, or else it would have to set appropriate penalties in each case using some kind of individualized procedure, which would impose a considerable cost in judicial resources, exactly what the statute aims to avoid. Mississippi instead has chosen a partial solution that will deter many, though not all, frivolous appeals without requiring a significant commitment of governmental resources. *Appellants from money judgments, and from the other types of judgments delineated in the statute, are a rational target of this scheme because the value of their claims, and thus of a proportional penalty, may be readily computed without substantial judicial intervention. The Constitution does not prohibit Mississippi from singling out a group of litigants that it rationally concludes is most likely to be deterred from bringing meritless claims at the least cost to the State.*

In addition, Mississippi's statute is less likely than was the statute in *Lindsey* to discourage substantial appeals along with insubstantial ones. Because the penalty operates only after a judgment has been affirmed without modification, there is less risk than in *Lindsey* of discouraging appellants who believe they have meritorious appeals but simply lack the funds to post a substantial bond during the appellate process. And whereas the assessment in *Lindsey* "automatically doubled the stakes," the 15%

penalty here is a relatively modest additional assessment. Although Mississippi may not have succeeded in eliminating all danger of deterring meritorious claims, we cannot say that the residual danger is sufficient to render the statutory scheme irrational.

Appellant argues that [Mississippi's statute] impermissibly burdens some litigants' access to the State's appellate system. Although the Court indicated in *Lindsey* that the effective foreclosure of a state right to appeal as to some litigants only—for example, indigent litigants—might well violate equal protection guarantees under even deferential scrutiny, appellee rightly notes that appellant lacks standing to challenge [Mississippi's statute] on this basis, because appellant has not alleged that its own right to appeal has been foreclosed by the statute.

*In short, unlike the double-bond provision condemned in Lindsey, the means chosen in [Mississippi's statute] are reasonably related to the achievement of the State's objectives of discouraging frivolous appeals, compensating appellees for the intangible costs of litigation, and conserving judicial resources.* It of course is possible that Mississippi might have enacted a statute that more precisely serves these goals and these goals only; as we frequently have explained, however, a state statute need not be so perfectly calibrated in order to pass muster under the rational-basis test. *We are satisfied that the means that the State has chosen are "reasonably tailored to achieve [the State's legitimate] ends."* [36]

 This Court, however, is "not bound by decisions of the United States Supreme

---

**36.** *Id.* at 83–85, 108 S.Ct. at 1653–54 (footnotes and citations omitted; emphases added).

Court when deciding whether a state statute impermissibly infringes upon individual rights guaranteed in the State Constitution so long as state constitutional protection does not fall below the federal floor, meaning the minimum guarantee of individual rights under the United States Constitution as interpreted by the United States Supreme Court."[37] The Kentucky Constitution's equal protection provisions, Sections 1, 2, and 3,[38] are much more detailed and specific than the Equal Protection Clause of the United States Constitution.[39] Moreover, the equal protection provisions of the Kentucky Constitution are enhanced by Section 59 and 60.[40] Section 59 prohibits, *inter alia*, the General Assembly from enacting special legislation: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: ... Twenty-ninth: In all other cases where a general law can be made applicable, no special law shall be enacted." Section 60 reiterates the prohibition against special legislation, providing that "[t]he General Assembly shall not indirectly enact any special ... act by the repeal in part of a general act ...." As we stated in *Perkins v. Northeastern Log Homes:*[41]

Many [states] have general protection against "arbitrary power" as we have in Kentucky Constitution § 2, and guarantees of "equal" rights and protection against "grant" of "separate ... privileges" as we have in Kentucky Constitution § 3. But few have additional protection against local and special legislation as we have in Kentucky Constitution § 59. So far as we can determine, none has anything like the combination of broad constitutional protection of individual rights against legislative interference vouchsafed by our 1891 Kentucky Constitution.[42]

Because of this additional protection, we have elected at times to apply a guarantee of individual rights in equal protection cases that is higher than the minimum guaranteed by the Federal Constitution. Instead of requiring a "rational basis," we have construed our Constitution as requiring a "reasonable basis"[43] or a "substantial and justifiable reason"[44] for discriminatory legislation in areas of social and economic

---

**37.** *Commonwealth v. Wasson,* 842 S.W.2d 487, 492 (Ky.1992)(citing *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575 (1975)).

**38.** Section 1 provides: "All men are, by nature, free and equal, and have certain inherent and inalienable rights...." Section 2 provides: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." And Section 3 provides: "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services ...."

**39.** *Tabler v. Wallace,* 704 S.W.2d 179, 183 (Ky.1986).

**40.** *Wasson,* 842 S.W.2d at 500.

**41.** 808 S.W.2d 809 (Ky.1991).

**42.** *Id.* at 818.

**43.** *Tabler v. Wallace,* 704 S.W.2d 179, 187 (Ky.1985) ("Where to draw the line as to what constitutes a "reasonable basis" for otherwise discriminatory legislation is a difficult matter."); *id.* at 185 ("The fundamental question is whether the General Assembly had a reasonable basis for this legislation ....").

**44.** *Id.* at 186 (Ky.1985) ("Defense counsels' arguments throughout have been to the effect that any reason however imaginative that could have existed requires us to uphold otherwise discriminatory legislation. On the contrary, there must be a substantial and justifiable reason apparent from legislative history, from the statute's title, preamble or subject matter, or from some other authoritative source.").

policy. Cases applying the heightened standard are limited to the particular facts of those cases. We need not decide, however, whether the facts of this case require us to invoke Kentucky's heightened standard because we hold that KRS 26A.300 fails the rational basis test, which is sufficient to show a violation of the equal protection provisions of both Constitutions.

■ The granting of discretionary review is, as the name indicates, a matter of discretion and "will be granted only when there are special reasons for it." [45] Thus, even though a discretionary review motion may demonstrate that reversible error may have occurred in a lower court, discretionary review may still be denied unless this Court determines that "special reasons for it" are present.[46] Consequently, only a small percentage, approximately 15%,[47] of discretionary review motions are granted in civil cases, and as a result the great majority of second-appeals, to which the penalty is applied, are generally unsuccessful motions for discretionary review in this Court.[48] Thus, in actual practice, the penalty is limited to unsuccessful movants for discretionary review who have posted a supersedeas bond, a quite limited subclass of unsuccessful appellants.

■ Generally a supersedeas bond is posted at or near the time that the notice of appeal is filed. Both the appellant and a "good and sufficient surety" sign the bond. The bond stays execution of the judgment and is conditioned on the "satisfaction of the judgment in full ... if the judgment is affirmed" on appeal.[49] In other words, it is simply a promise by an appellant and the surety to pay the judgment if it is affirmed. Because of the risk they take, sureties naturally charge a fee for executing a supersedeas bond. A party, however, does not need to post a supersedeas bond to take an appeal from a

---

**45.** CR 76.20(1).

**46.** *See* CR 76.20(9)(a) ("The denial of a motion for discretionary review does not indicate approval of the opinion or order sought to be reviewed and shall not be cited as connoting such approval."); 7 KURT A. PHILIPPS, JR., KENTUCKY PRACTICE, RULES OF CIVIL PROCEDURE ANNOTATED, Rule 76.20, cmt. 1 (5th ed. West Group 1995) ("Normally, a claim that the Court of Appeals merely erred in its decision will not be a special reason to grant a motion for discretionary review.... In articulating the reasons for granting review, a party should be aware that the court will normally be looking for a cogent and special reason other than the case should be decided differently.").

**47.** This is based on 2003 statistics showing that we granted only 56 of 356 motions for discretionary review in civil cases. In 2003, the Court of Appeals disposed of 1,556 civil appeals, which means that a motion for discretionary review is filed in just under 23% of civil cases.

**48.** *See supra* notes 14, 15. We recognize that CR 62.03, which allows the stay of a judgment by the giving of a supersedeas bond, is not limited to appeals from circuit court judgments. Thus, if the Court of Appeals denies discretionary review of or affirms an appeal from a circuit court judgment in a case appealed to it from a superseded district court judgment, then the penalty is applicable. Such a scenario is so unlikely to occur or occurs so rarely that it is not a consideration in addressing the issues in this case. We note that CR 72.02 makes only CR 73.02, 73.03, and CR 74 applicable to appeals from district court, but CR 73.04, the appellate rule concerning the posting of a supersedeas bond, is not made applicable to an appeal from district court. CR 73.04, however, refers to CR 62.03 and therefore a district court money judgment may be superseded.

**49.** CR 73.04(1) ("The bond shall be in a fixed amount and conditioned for the satisfaction of the judgment in full together with costs, interest and damages for delay, if the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, including costs on the appeal and interest as the appellate court may adjudge.").

judgment. The failure to post a bond, however, leaves the party who obtained the judgment free to execute on it, though the party who executes on a judgment during the pendency of an appeal of the judgment does so at his or her own risk because, if the judgment is reversed, any benefits obtained by virtue of the execution must be restored to the adverse party.[50] But the person failing to supersede the money judgment "suffers" the risk of getting the money back if the judgment is reversed.[51] Furthermore, satisfaction of the judgment by execution, in the absence of sufficient assets, could result in the loss of the judgment debtor's home or business during the appeal. Obviously, then, the benefit of a supersedeas bond to an appellant is that it stays execution on the judgment and thereby avoids the risks associated with the adverse party executing on the judgment. The party executing on the judgment benefits from having the immediate use of the money and eliminates the risk of not being able to get the money if the judgment is affirmed, but by doing so,

the judgment creditor creates the risk of having to restore any benefits obtained by reason of the execution on the judgment and loses the judgment interest that would otherwise accrue during the appeal.

As earlier noted, the goal of the Legislature in enacting KRS 26A.300 was to prevent frivolous appeals. While this is certainly a legitimate state interest, the question remains whether a rational relationship exists between the statute and its goal. As a practical matter, the statute applies mainly to unsuccessful discretionary review motions to this Court from superseded judgments. Thus, it actually impacts only a small number of appellants, and it imposes a substantial penalty[52] on those appellants if their discretionary review motion—regardless of its merits—is denied by this Court, which is the most likely result.[53]

Because of the low likelihood of success coupled with the cost normally associated with preparing a discretionary review mo-

---

**50.** *Walter v. Moore,* 198 Ky. 744, 249 S.W. 1041, 1043 (1923) ("The judgment is affirmed so far as it relates to the brooch in question, but is reversed with directions to enter a judgment requiring the defendant to restore the ring, if she has it, and, if not, to adjudge the plaintiff the value thereof."); *Webb v. Webb's Guardian,* 178 Ky. 152, 198 S.W. 736, 740 (1917) ("[I]f the purchaser at a judicial sale, either under execution or a decree, is a party to the record who procured the erroneous judgment, or his attorney, or assignee before the sale, when it is reversed upon appeal, if the property sold is in the hands of such party, he may be required to make restitution of the property, and if not, he can be made liable for its value, or at least all which he received from the sale."); *Aune v. B–Y Water Dist.,* 505 N.W.2d 761, 765 (S.D.1993) ("[O]ne who executes on a judgment during the pendency of an appeal of the judgment does so at his own risk. If he obtains benefits from the execution and the judgment is subsequently reversed, those benefits must then be restored to the adverse party."); AM. JUR. 2D

*Appellate Review* § 433 (1999) ("One who executes upon a judgment from which an appeal has been taken does so at his or her own risk; if he or she obtains benefits from the execution, those benefits must be restored to the adverse party in the event the judgment is reversed on appeal.").

**51.** *Koster & Wythe v. Massey,* 262 F.2d 60, 62 (9th Cir.1958) ("A person who cannot furnish supersedeas bond does not lose his right to appeal. What he suffers is that he takes the risk of getting the money back again if the judgment is reversed.").

**52.** Though the *Bankers Life* Court stated that the 15% penalty involved therein was "a relatively modest additional assessment," *Bankers Life and Cas. Co. v. Crenshaw,* 486 U.S. 71, 84, 108 S.Ct. 1645, 1654, 100 L.Ed.2d 62 (1988), we fail to see any modesty in the imposition of a $950,000 penalty, as was the case here.

**53.** See *supra* note 47.

tion and with then preparing and submitting a brief if the motion is granted, a party is naturally deterred by the process itself from filing a frivolous discretionary review motion.[54] Additionally a money judgment bears 12% interest; this may discourage a solvent judgment debtor from filing a frivolous appeal and allowing the 12% interest to continue accruing on the judgment.[55] And we also have a civil rule, CR 73.02(4), that directly targets frivolous appeals. CR 73.02(4) provides: "If an appellate court determines that an appeal or motion is frivolous, it may award just damages and single or double costs to the appellee or respondent. An appeal or motion is frivolous if the court finds that it is so totally lacking in merit that it appears to have been taken in bad faith." The rule allows this Court to adequately deter, and to punish if necessary, *any* appellant filing a frivolous appeal or discretionary review motion. For these reasons, judgment debtors are understandably deterred from filing frivolous motions for discretionary review in this Court, regardless of whether the judgment has been superseded and regardless of the appeal penalty mandated by KRS 26A.300.

For some of the same reasons, i.e., associated cost and low likelihood of success, many discretionary review motions with merit are also understandably not filed. But, logically, even additional meritorious motions for discretionary review are deterred by the possibility, if not the probability of the substantial penalty—almost $1,000,000 in this case—imposed by KRS 26A.300. Worse still, the statute may very well fail to achieve its primary purpose

because parties who cannot pay, or cannot pay without difficulty, a money judgment will not be deterred from filing a frivolous appeal. Such borderline judgment creditors will be unable to post a supersedeas bond. But since they have not posted the bond, they have nothing to lose by filing an appeal because they will not be subject to an appeal penalty. As such, the statute simply fails to stop these truly frivolous appeals.

Ultimately, the problem with the statute is that while it *may* deter a small number of frivolous appeals—though, more likely than not, these appeals would already be deterred by the other provisions—it deters even more meritorious appeals. And, because it applies to such a narrow class— defendant money judgment creditors, as opposed to all judgment creditors, the value of whose judgment can be quantified (as in *Bankers Life*)—it violates *Lindsey's* command that an appeal right "cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." [56] Distinguishing between defendant money judgment creditors and other money judgment creditors, or judgment creditors, the value whose judgments can be quantified, is arbitrary and capricious. As such, by focusing on such a narrow class, the statute is the sort of arbitrary statute covered by *Lindsey's* understanding of "rational basis."

The alternate means established by this Court, i.e., CR 73.02(4), for deterring frivolous appeals to this Court is sufficient and does not discriminate against unsuccessful appellants who have superseded a money

---

54. Parties seek discretionary review in approximately 23% of civil cases decided by the Court of Appeals. See *supra* note 47.

55. More than three million dollars in postjudgment interest accrued during the appeals in this case.

56. *Lindsey v. Normet*, 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972).

judgment. We note that KRS 360.040, which provides judgment interest, and was enacted to compensate for delay, also acts to deter frivolous appeals. The relationship between KRS 26A.300 and its goal is "so attenuated as to render the statute arbitrary and irrational." [57] We thus conclude that the goal of KRS 26A.300, although laudable, is not rationally related to the statute, and that KRS 26A.300 denies Appellant equal protection. It, therefore, fails constitutional scrutiny.

## B. Separation of Powers

"It is well settled law in the state of Kentucky that one branch of Kentucky's tripartite government may not encroach upon the inherent powers granted to any other branch." [58] Sections 27 and 28 are "clear and explicit on this delineation." [59] "[T]he framers of Kentucky's constitution ... were undoubtedly familiar with the potential damage to the interests of the citizenry if the powers of government were usurped by one or more branches of that government." [60] Thus, "it has been our [predecessor's] view [and our view], in interpreting Sections 27 and 28, that the separation of powers doctrine is fundamental to Kentucky's tripartite system of government and must be 'strictly construed.' " [61] One branch, therefore, is not empowered to exercise power properly belonging to another branch simply because the other branch is "along for the ride." [62] Because of the judiciary's unique position as the final unchecked arbiter of constitutional disputes, we "should be particularly vigilant to restrain [our] own exercise of power." [63] It is important that the powers of the Legislature should not "stand or fall according as they appealed to the approval of the judiciary; else one branch of government, and that the most representative of the people, would be destroyed, or at least completely subverted to the judges." [64]

Except for matter of right appeals, which are expressly provided for,[65] the Kentucky Constitution undeniably delegates exclusively to this Court the authority to adopt rules of practice and procedure for the Court of Justice and *rules governing our appellate jurisdiction.*[66]

---

**57.** *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985).

**58.** *Smothers v. Lewis,* 672 S.W.2d 62, 64 (Ky. 1984).

**59.** *Ky. Alcoholic Beverage Control Bd. v. Klein,* 301 Ky. 757, 192 S.W.2d 735, 738 (1946).

**60.** *Legislative Research Comm'n v. Brown,* 664 S.W.2d 907, 911–12 (Ky.1984).

**61.** *Id.* at 912.

**62.** *Prater v. Commonwealth,* 82 S.W.3d 898, 907 (Ky.2002).

**63.** *Kuprion v. Fitzgerald,* 888 S.W.2d 679, 699 (Ky.1994); *accord Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577, 580 (1948) ("It is essential that the sharp separation of the powers of government be preserved carefully by the courts. Those which are judicial must not be permitted to encroach upon those which are legislative.").

**64.** *E. Ky. Coal Lands Corp. v. Commonwealth,* 127 Ky. 667, 106 S.W. 260, 275 (1907).

**65.** *See* KY. CONST. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

**66.** KY. CONST. § 116 ("The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction ...."); *see also* KY. CONST. § 110(2)(b) ("In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as provided by its rules."); *O'Bryan v. Hedgespeth,* 892 S.W.2d 571, 576 (Ky.1995) ("Kentucky Constitution Section 116 vests exclusive jurisdiction in the Supreme Court to prescribe 'rules

By statute, the Legislature has recognized this delegation of power.[67] Just as it would be a violation of separation of powers for this Court to exercise power properly belonging to another branch, e.g., adopting substantive law under the guise of enacting a procedural rule [68] since the enactment of substantive law is the exclusive prerogative of the Legislature under our Constitution,[69] a similar constitutional violation of separation of powers occurs when the Legislature promulgates rules of practice and procedure for the Court of Justice or rules governing the appellate jurisdiction of this Court.[70]

Consistent with the Constitutional delegation of power to this Court "to prescribe rules governing [our] appellate jurisdiction," [71] we have promulgated CR 76.20(1) which provides:

A motion for discretionary review by the Supreme Court of a decision of the Court of Appeals[ ] ... shall be prosecuted as provided by this Rule 76.20 and in accordance with the Rules generally applicable to other motions. Such review is a matter of judicial discretion and will be granted only when there are special reasons for it.

And in aid of our discretionary appellate jurisdiction and pursuant to our authority to prescribe "rules of practice and procedure," we adopted CR 73.02(4) to deter frivolous appeals or motions for discretionary review to this Court:

If an appellate court determines that an appeal or motion is frivolous, it may award just damages and single or double costs to the appellee or respondent. An appeal or motion is frivolous if the court finds that it is so totally lacking in merit

of practice and procedure for the Court of Justice.'"); *Huff v. Commonwealth*, 763 S.W.2d 106, 108 (Ky.1988) (Gant, J., concurring) ("Section 109 provides that judicial power shall vest in the Supreme Court, and Section 116 empowers the Supreme Court to make all rules of practice and procedure."); *Smothers v. Lewis*, 672 S.W.2d 62, 64 (Ky. 1984) ("Section 116 of the Constitution of Kentucky's 'Judicial Article' which was approved by the voters in 1976 provides that: 'The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction....' Thus, the source of the Court's rule making power is firmly rooted within the Constitution.").

67. KRS 21A.050(2) ("The method of bringing a judgment, order or decree of a lower court to the Supreme Court for review shall be established by Supreme Court rule. The procedures for appellate review shall be established by the Rules of Civil Procedure, Rules of Criminal Procedure and other rules promulgated by the Supreme Court.").

68. *Richey v. Richey*, 389 S.W.2d 914, 919 (Ky.1965) ("Rules of court are procedural. They cannot affect substantive law."); *Lunsford v. Commonwealth*, 436 S.W.2d 512, 514 (Ky.1969) ("The power (that is, the jurisdic-

tion) of a court or magistrate to take away a person's liberty is a matter of substance, and cannot originate from the judicial power to regulate practice and procedure in the courts.").

69. KY. CONST. § 27; 16A AM. JUR. 2D *Constitutional Law* § 275 (1998) ("Legislative power includes the power to make laws...."); *id.* § 286 ("[W]hether legislative action is appropriate involves the distinction between substance, which is a legitimate subject of legislative action, and procedure, which is under the exclusive jurisdiction of the courts.").

70. KY. CONST. § 110(2)(b); KY. CONST. § 116; *Commonwealth v. Reneer*, 734 S.W.2d 794, 796 (Ky.1987) ("The Supreme Court of this Commonwealth has the authority to prescribe rules of practice and procedure in the courts of this Commonwealth. Because K.R.S. 532.055 is a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure, it violates the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution." (citation omitted)).

71. KY. CONST. § 116.

that it appears to have been taken in bad faith.

■■■ KRS 26A.300, as discussed supra, deters discretionary review motions—both frivolous and meritorious—and it thereby limits or restricts the Kentucky Supreme Court in exercising its jurisdiction to review cases from lower courts. By so doing, it invades the constitutional power assigned exclusively to the Kentucky Supreme Court to "exercise appellate jurisdiction as provided by *its rules*."[72] We note, however, that CR 76.20(9)(a), a rule promulgated by this Court, provides that upon the denial of a discretionary review motion "if a supersedeas bond has been executed, damages for delay shall be recoverable pursuant to KRS Chapter KRS 26A." But, this rule, itself, does not impose a penalty on an unsuccessful Appellant; rather the quoted language was included simply for the purpose of referencing KRS 26A.300, which was enacted by the Legislature. By referencing KRS Chapter 26A, we did not place the Court's imprimatur on KRS 26A.300. Thus, because KRS 26A.300 violates the separation of powers provisions of the Kentucky Constitution, it is unconstitutional.

Finally we would note that this separation of powers issue was not raised in the lower courts, but rather it was raised sua sponte by members of this Court during oral argument. The parties addressed the issue and we have confined ourselves to the record. Thus we are not precluded by any rule or constitutional provision from addressing this issue.[73]

## IV. CONCLUSION

Because we hold that KRS 26A.300 denies Appellant equal protection in violation of both the Kentucky and Federal Constitutions and that the statute also violates the separation of powers provisions of the Kentucky Constitution, we reverse the Court of Appeals and vacate the judgment of the Floyd Circuit Court imposing a penalty under KRS 26A.300.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

SCOTT, J., not sitting.

---

**72.** KY. CONST. § 110(2)(b) (emphasis added).

**73.** *Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky.1997) ("So long as an appellate court confines itself to the record, no rule of court or constitutional provision prevents it from deciding an issue not presented by the parties." (citations omitted)); *Mitchell v. Hadl*, 816 S.W.2d 183 (Ky.1991); *Elery v. Martin*, 4 S.W.3d 550, 551 (Ky.App.1999) (addressing constitutional issue raised sua sponte by the court). *But see* 16 C.J.S. *Constitutional Law* § 92 (2004) ("As a general rule, a court will not inquire into the constitutionality of a statute ... on its own motion, but only those constitutional questions which are duly raised and insisted on, and are adequately argued and briefed will be considered.... This is not an inflexible rule, however, and in some instances constitutional questions inherently involved in the determination of the cause may be considered even though they may not have been raised as required by orderly procedure.").