RENDERED: MARCH 23, 2017
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$



2016-SC-000039-WC

DATE 4/13/17 Kim Redmon, DC

RAY BALLOU

APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-000812-WC
WORKERS' COMPENSATION BOARD
NO. 13-WC-00049

ENTERPRISE MINING CO, LLC;
HON. ROLAND CASE,
ADMINISTRATIVE LAW JUDGE;
WORKERS' COMPENSATION BOARD; AND
KENTUCKY ATTORNEY GENERAL

APPELLEES

## OPINION OF THE COURT BY JUSTICE KELLER

## AFFIRMING

An Administrative Law Judge (ALJ) found that Ray Ballou has a radiographic classification of category 1/1 coal workers' pneumoconiosis (CWP) with spirometric test values that exceed 80%. Based on those findings, the ALJ awarded Ballou retraining incentive benefits (RIB). However, because of Ballou's advanced age, the ALJ found that Ballou could not receive those benefits unless he participated in an approved retraining or educational program. Ballou challenges the constitutionality of the RIB statute's age classifications. Having reviewed the record and the arguments of the parties, we affirm the holding by the Court of Appeals that those age classifications are constitutional.

# I. BACKGROUND.

The parties do not dispute the underlying facts. Ballou, who was born on June 10, 1942, has a 9th grade education and has not received his GED. He worked as an underground coal miner from 1982 until 2012 and was 69 years of age when last exposed to coal dust. Ballou timely filed his occupational disease claim, and the parties filed various medical reports in support of and in opposition to that claim. Based on the evidence, the ALJ found that Ballou has category 1/1 coal workers' pneumoconiosis but no breathing impairment, and the ALJ awarded benefits pursuant to Kentucky Revised Statute (KRS) 342.732(1)(a). However, because Ballou was more than 65 years of age, the ALJ determined that Ballou could only receive those benefits if he participated in an approved retraining or educational program. As noted above, the only issue before this Court is whether the age classifications in KRS 342.732 violate Ballou's right to equal protection. We set forth additional background information as necessary below.

# II. STANDARD OF REVIEW.

The issue Ballou raises is one of law, which we review *de novo*. *See U.S. Bank Home Mortgage v. Schrecker*, 455 S.W.3d 382, 384 (Ky. 2014).

# III. ANALYSIS.

KRS 342.732 provides in pertinent part as follows:

(1) Notwithstanding any other provision of this chapter, income benefits and retraining incentive benefits for occupational pneumoconiosis resulting from exposure to coal dust in the severance or processing of coal shall be paid as follows:

(a) 1. If an employee has a radiographic classification of category 1/0, 1/1 or 1/2, coal workers' pneumoconiosis and spirometric test values of eighty percent (80%) or more, the employee shall be awarded a one (1) time only retraining incentive benefit which shall be an amount equal to sixty-six and two-thirds percent (66-2/3%) of the employee's average weekly wage as determined by KRS 342.740, but not more than seventy-five percent (75%) of the state average weekly wage, payable semimonthly for a period not to exceed one hundred four (104) weeks, except as provided in subparagraph 3. of this paragraph.

2. Except as provided in subparagraph 3. of this paragraph, these benefits shall be paid only while the employee is enrolled and actively and successfully participating as a full-time student taking the equivalent of twelve (12) or more credit hours per week in a bona fide training or education program that if successfully completed will qualify the person completing the course for a trade, occupation, or profession and which program can be completed within the period benefits are payable under this subsection. The program must be approved under administrative regulations to be promulgated by the commissioner. These benefits shall also be paid to an employee who is a part-time student taking not less than the equivalent of six (6) nor more than eleven (11) credit hours per week, except that benefits shall be an amount equal to thirty-three and one-third percent (33-1/3%) of the employee's average weekly wage as determined by KRS 342.740, but not more than thirty-seven and one-half percent (37-1/2%) of the state average weekly wage, payable biweekly for a period not to exceed two hundred eight (208) weeks.

3. These benefits shall also be paid biweekly while an employee is actively and successfully pursuing a General Equivalency Diploma (GED) in accordance with administrative regulations promulgated by the commissioner. These benefits shall be paid in the amount of sixty-six and two-thirds percent (66-2/3%) of the employee's average weekly wage not to exceed seventy-five percent (75%) of the state average weekly wage for a maximum period not to exceed seventeen (17) weeks. These income benefits shall be in addition to the maximum amount of retraining incentive benefits payable under this paragraph.

4. The employer shall also pay, directly to the institution conducting the training or education program, instruction, tuition, and material costs not to exceed five thousand dollars ($5,000).

5. The period of weeks during which this benefit is payable shall begin no later than the thirtieth day after the administrative law judge's order awarding the benefit becomes final, except that an employee may elect to defer the beginning of such benefits up to the three hundred sixty-fifth day following the thirtieth day the order becomes final. Unless the employee has requested deferral of income benefits, those income benefits payable under subparagraphs 1. and 2. of this paragraph shall begin no later than thirty (30) days following conclusion of income benefits paid under subparagraph 3. if such benefits were paid.

6. If an employee who is awarded retraining incentive benefits under this paragraph successfully completes a bona fide training or education program approved by the commissioner, upon completion of the training or education program, the employer shall pay to that employee the sum of five thousand dollars ($5,000) for successful completion of a program that requires a course of study of not less than twelve (12) months nor more than eighteen (18) months, or the sum of ten thousand dollars ($10,000) for successful completion of a program that requires a course of study of more than eighteen (18) months. This amount shall be in addition to retraining incentive benefits awarded under this paragraph, and tuition expenses paid by the employer.

7. An employee who is age fifty-seven (57) years or older on the date of last exposure and who is awarded retraining incentive benefits under subparagraphs 1. to 4. of this paragraph, may elect to receive in lieu of retraining incentive benefits, an amount equal to sixty-six and two-thirds percent (66-2/3%) of the employee's average weekly wage, not to exceed seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740 multiplied by the disability rating of twenty-five percent (25%) for a period not to exceed four hundred twenty-five (425) weeks, or until the employee reaches sixty-five (65) years of age, whichever occurs first, KRS 342.730(4) notwithstanding.

8. A claim for retraining incentive benefits provided under this section may be filed, but benefits shall not be payable, while an employee is employed in the severance or processing of coal as defined in KRS 342.0011(23).

Thus, a RIB award contains three components. One component consists of payment of income benefits to a medically eligible coal industry employee who participates in an approved retraining or educational program. The

4

second component consists of payment of funds directly to the institution providing the retraining or education. The third component consists of payment of a lump sum to the employee upon successful completion of an approved retraining or educational program. We note that an employee who qualifies medically for RIB can opt to participate in an approved retraining or educational program and receive the preceding benefits regardless of age.

KRS 342.732(1)(a)7 provides a different option for those employees who were 57 or older when last exposed to the hazards of CWP. Those employees may opt to receive monetary benefits based on a 25% disability rating in lieu of RIB for a period not to exceed 425 weeks or until they reach age 65. Thus, while the option to receive RIB is available to all medically eligible employees, the option to receive monetary benefits in lieu of RIB is only available to medically eligible employees between the ages of 57 and 65. It is this classification that Ballou challenges.

Ballou argues that, "under the statute, anyone who was 65 years or older when he last worked receives no benefits solely due to his age." As noted above, this is simply not the case. Ballou, like every other employee who medically qualifies for RIB, is entitled to receive RIB regardless of his age. In fact, the ALJ awarded Ballou RIB and set forth the amount of benefits Enterprise Mining is required to pay if Ballou enrolls in and participates in an approved retraining or educational program. The only "benefit" Ballou is foreclosed from is the option to receive income without participating in an approved retraining or educational program. Thus, Ballou is treated exactly

5

the same as every other RIB eligible employee younger than 57 and older than 65. Therefore, the issue is whether the General Assembly had a reason for permitting RIB eligible employees between 57 and 65 to opt to receive monetary benefits in lieu of RIB.

As noted above, it is undisputed that KRS 342.732(1)(a)7 gives employees between the ages of 57 and 65 who qualify for RIB an option that other qualified employees do not have. When a statutory provision results in arguably disparate treatment, we look to the 14th Amendment of the United States Constitution and to Sections 1, 2, and 3 of the Kentucky Constitution. The goal of those constitutional provisions "is to 'keep[ ] governmental decision makers from treating differently persons who are in all relevant respects alike'" while recognizing that "nearly all legislation differentiates in some manner between different classes of persons." *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011) (citation and footnote omitted). In order to maintain the necessary balance between the goals of the constitutional provisions and legislative reality, the Courts apply different levels of scrutiny depending "on the classification made in the statute and the interest affected by it." *Id.*

> Currently, there are three levels of review applicable to an equal protection challenge. Strict or intermediate scrutiny applies whenever a statute makes a classification on the basis of a "suspect" or "quasi-suspect" class, respectively. Conversely, "if the statute merely affects social or economic policy, it is subject" to a less searching form of judicial scrutiny, i.e. the "rational basis" test.

6

*Id.* at 465–66 (citations and footnotes omitted). "Workers' compensation statutes concern matters of social and economic policy. As a result, such a statute is not subject to strict or [intermediate] scrutiny and therefore must be upheld if a 'rational basis' or 'substantial and justifiable reason' supports the classifications that it creates." *Id.* at 466 (citation omitted).[1] Proving the absence of a rational basis or of a substantial and justifiable reason for a statutory provision is a steep burden. *Id.* at 468-69.

The purpose of RIB is to encourage coal industry employees who have early signs of CWP to leave the coal industry before that disease results in significant impairment. *See Kem Coal Co. v. Turner*, 920 S.W.2d 86, 88 (Ky. App. 1996). Thus, in order to receive RIB or benefits in lieu of RIB (or any other CWP related benefits), employees who have radiographic evidence of the disease but no significant breathing impairment,[2] must stop "working in the mining industry in the severance and processing of coal." KRS 342.732(6). RIB is not, like income benefits in KRS 342.730, meant to replace lost earning

---

[1] We note that, while federal case law may be instructive regarding issues of equal protection, we are not bound to follow federal equal protection analysis. As we noted in *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W.3d 408, 418 (Ky. 2005), "the Kentucky Constitution's equal protection provisions . . . are much more detailed and specific than the Equal Protection Clause of the United States Constitution." The analysis employed by our federal counterparts acts as a floor, below which we may not fall, not as a ceiling, above which we may not rise. *Id.* In fact, "we have construed our Constitution as requiring a 'reasonable basis' or a 'substantial and justifiable reason' for discriminatory legislation in areas of social and economic policy." *Id.* at 418-19. In this case however, the preceding distinction, while important, is one without a difference because KRS 342.732(1)(a)7 passes both tests.

[2] Employees who have radiographic evidence of category 1/0, 1/1, or 1/2 CWP and spirometric test values between 55% and 80% or employees who have category 2/1, 2/2, or 2/3 CWP with spirometric test values of 80% or more may choose to receive RIB in lieu of an award of income benefits based on a 25% disability rating.

7

capacity due to impairment. Therefore, any comparison to KRS 342.730 is of little persuasive value.

The issue with KRS 342.732(1)(a)7 is whether treating RIB eligible employees who are 57 or older but younger than 65 differently from all other RIB eligible employees has any rational relationship to the purpose of RIB. We hold that it does. Employees who are between 57 and 65 are rapidly approaching retirement age and are less likely to be amenable to embarking on a new career. Therefore, offering to retrain such employees is not likely to motivate them to leave the coal mining industry in order to prevent them from becoming impaired. However, paying those employees a monetary benefit that is not tied to retraining may do so, thus removing employees susceptible to more severe impairment from the work place. Encouraging susceptible employees to leave the industry provides a rational basis for any perceived discrimination. Furthermore, a significant number of employees will have left or be in the process of leaving the coal industry at age 65; therefore, the added incentive of KRS 342.730(1)(a)7 is no longer needed.

Finally, we believe that the provisions of KRS 342.732(1)(a)7 are indivisibly intertwined. KRS 342.732(1)(a)7 must fall or stand in its entirety and declaring it unconstitutional would leave Ballou in the same position he is in today: entitled to RIB but only so long as he enrolls in and participates in an approved retraining or educational program.

## IV. CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Venters, JJ., concur. Wright, J., dissents without opinion.

COUNSEL FOR APPELLANT:

Thomas Wayne Moak
Moak & Nunnery, PSC

COUNSEL FOR APPELLEE, ENTERPRISE MINING CO., LLC.:

Hugh Brettelle Stonecipher
Tighe A. Estes
Fogle Keller Purdy, PLLC

COUNSEL FOR APPELLEE, KENTUCKY ATTORNEY GENERAL:

Andy Beshear
James Robert Carpenter
Office of Kentucky Attorney General