AMERICAN TRUCKING ASSOCIATION, INC.; Kentucky Motor Transport Association, Inc.; A. Arnold & Son Transfer & Storage Co., Inc.; "Al" Naish Moving and Storage Co.; Atlas Trucking, Inc.; Bestway Express, Inc.; Edgar Vissing, d/b/a Pleasant Grove Farm; John Franconia Trucking Co., Inc.; Marvin Tanner Trucking Company, Inc.; Square D Company, Respondents/Appellants,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET; James R. Runke, Secretary Kentucky Transportation Cabinet; Department of Vehicle Regulation, Kentucky Transportation Cabinet; and Timothy D. Helson, Commissioner Department of Vehicle Regulation, Kentucky Transportation Cabinet, Movants/Appellees.

AMERICAN TRUCKING ASSOCIATION, INC.; Kentucky Motor Transport, Inc.; A. Arnold & Son Transfer & Storage Co., Inc.; "Al" Naish Moving and Storage Co.; Atlas Trucking, Inc.; Bestway Express, Inc.; Edgar Vissing, d/b/a Pleasant Grove Farm; John Franconia Trucking Co., Inc.; Marvin Tanner Trucking Company, Inc.; Square D Company, Respondents/Appellants,

v.

COMMONWEALTH of Kentucky, TRANSPORTATION CABINET; James R. Runke, Secretary Kentucky Transportation Cabinet; Department of Vehicle Regulation, Kentucky Transportation Cabinet; and Timothy D. Helson, Commissioner Department of Vehicle Regulation, Kentucky Transportation Cabinet, Movants/Appellees.

Supreme Court of Kentucky.

Sept. 13, 1984.

William L. Willis, Frankfort, for respondents/appellants.

Dorothy Pitt, James R. Cox, Patrick A. Nepute, Marvin J. Hirn, Greenebaum, Doll & McDonald, Louisville, Dandridge F. Walton, Frankfort, for movants/appellees.

VANCE, Justice.

These two appeals arise from a challenge to the constitutionality of provisions of Chapter 138 of the Kentucky Revised Statutes which imposed a "weight-distance" tax upon private carriers and a challenge to the validity of regulations adopted by the Transportation Cabinet for the administration of the Act.

A question as to the validity of a regulation which authorized per diem charges to be assessed against carriers in the event they elected to have audits of their records performed outside the Commonwealth of Kentucky was severed, by agreement, from the other constitutional issues raised and was decided by a separate judgment of the trial court. An appeal from that judgment was transferred directly to this court.

A partial summary judgment was entered by the trial court which upheld the constitutionality of the Act. The partial summary judgment did not dispose of a claim regarding the constitutionality of K.R.S. 189.276 which created an exemption from the payment of the "weight-distance" and other motor fuel taxes for motor carriers transporting natural resources under an approved resource recovery road hauling permit.

The appeal from this partial summary judgment was transferred directly to this court, and we shall consider the issues presented by each of the appeals in this opinion.

### THE WEIGHT-DISTANCE TAX

K.R.S. 138.660(3), (4) provides as follows:

"(3)(a) In addition to the tax imposed in subsections (1) and (2) of this section, every motor carrier shall pay the weight distance tax as set forth in this section on the amount of gasoline and special

fuels in operations on the public highways of this state.

(b) The weight distance tax shall be computed as follows on the combined licensed weight of the motor vehicle and trailers or semitrailers as defined in KRS 138.665: The rate shall be 2.85 cents (0.285) per mile, for combined licensed weights in excess of fifty nine thousand nine hundred and ninety nine (59,999) pounds.

(4) The tax levied under subsections (1), (2) and (3) of this section shall be computed and paid as provided in KRS 138.690. (Enact. Acts 1954, ch. 97, § 3; 1956 (2nd Ex.Sess.), ch. 9, § 16; 1958, ch. 70, § 15; 1972, ch. 61, § 7; 1976 (Ex. Sess.), ch. 6, § 3; 1980, ch. 218, § 5, effective July 1, 1980; 1982, ch. 265, § 6, effective April 1, 1982.)"

K.R.S. 138.690(2) provides:

"(2) The tax imposed by KRS 138.-660(3) shall be determined by the total number of miles driven during the taxable period in the licensee's operations on the public highways in Kentucky and shall be multiplied by the combined licensed weight tax rate. (Enact. Acts 1954, ch. 97, § 9; 1956 (2nd Ex.Sess.), ch. 9, § 22; 1958, ch. 70, § 18; 1982, ch. 265, § 7, effective April 1, 1982.)"

K.R.S. 138.655(14) defines "combined licensed weight" as follows:

"(14) 'Combined licensed weight' shall mean the greater of:

(a) The declared combined maximum gross weight of vehicle and any towed unit for registration purposes for the current registration period; or

(b) The highest actual combined gross weight of the vehicle and any towed unit when operated on the public highways of the state during the current registration period. (Enact. Acts 1954, ch. 97, § 2; 1956, ch. 171, § 1; 1956 (2nd Ex.Sess.), ch. 9, § 15; 1958, ch. 70, § 14; 1960, ch. 186, Art. IV, § 5; 1962, ch. 62, § 21; 1980, ch. 39, § 1, effective July 15, 1980; 1982, ch. 265, § 5, effective April 1, 1982;

1982, ch. 395, § 24, effective July 15, 1982.)"

601 K.A.R. 9.072E(3) provides:

"(1) For the purpose of this section registration shall mean the registration of the licensee for the purpose of the tax imposed by KRS 138.660 and shall be required of all motor carriers as defined in KRS 138.655(5). The current registration period shall be deemed that quarterly period for which the tax is due under KRS 138.660 or required to be reported on the quarterly return. The applicant for the license shall apply to the Department for a motor vehicle identification card on forms prescribed and furnished by the Department. The completion by the applicant and submittal to the Department for validation shall be necessary prior to the authority of the applicant to operate a motor vehicle on the public highways of Kentucky. A motor carrier identification card shall be issued which must contain the name and address of the owner or operator, the identification of the vehicle, and such other information as may be requested, including, but without limitation, the KYU license number issued to the applicant for the use of the public highways of Kentucky. The identification card shall show the vehicle combined license weight or the actual combined gross weight of the vehicle and any towed unit when operated on the public highways of the state during the current registration period as defined hereinabove.

(2) Definitions.

(a) 'Combined license weight' shall mean the declared combined maximum gross weight of the vehicle and any towed unit for the registration purposes for the current registration period as defined hereinabove; or the highest actual combined gross weight of the vehicle and any towed unit when operated on the public highways of the state during the current registration period as defined herein.

(b) 'Declared gross weight' shall mean the same as Paragraph (a) above.

(c) 'Tare weight' shall mean the weight of the vehicle without the weight of the load.

(d) 'Net weight' shall mean the same as (c) above.

(e) 'Gross weight' shall mean the unloaded weight of the vehicle plus the maximum load to be carried by it on the highways of the Commonwealth of Kentucky.

(3) The identification card shall be displayed in the cab of the vehicle at all times. Failure to display the identification card shall constitute a violation of KRS 138.655. Each day constitutes a separate violation."

Appellants contend that the weight-distance tax denies them equal protection of law because the tax is imposed on an arbitrary basis without relation to any proper or reasonable classification. The basis of this contention is that trucks in Kentucky and a number of other states are licensed upon a declaration of gross weight with the license fee escalating upward in proportion to the declared gross weight. Other states use different criteria for license which do not require the declaration of the gross weight of the vehicle plus the cargo.

It is contended that a vehicle licensed in Ohio, for instance, where no declaration of gross weight as fully loaded is required, under the terms of the statute, would not be required to pay the weight distance tax if it did not, in Kentucky, carry a gross weight in excess of 59,999 pounds, whereas a vehicle in Kentucky with a declared gross weight in excess of 55,000 pounds, and less than 62,000 pounds, is usually licensed for a gross weight of 62,000 pounds and would, under the statute, be required to pay the weight distance tax even though its greatest weight when used in Kentucky during the taxable period never exceeded 59,999 pounds.

The real question is whether the "declared combined maximum gross weight for registration purposes" means the declared gross weight furnished for the purpose of obtaining a license for the vehicle or whether it means the *declared combined maximum gross weight furnished by the licensee to the transportation cabinet for the purpose of computing the weight-distance tax.*

601 K.A.R. 9.072E(3) provides that for the purposes of the weight-distance tax, registration shall mean the registration of the licensee for the purposes of the weight-distance tax. The declaration of the licensee of the combined maximum weight for the purposes of the tax is shown on a cab-identification card and may be different from the declaration made for the purpose of licensing the vehicle. Thus, a vehicle licensed for a gross weight of 62,000 pounds may have a declared combined maximum gross weight of less than 60,000 pounds for the purpose of the imposition of the tax.

█ Under the regulations, as they are administered in Kentucky, all vehicles licensed in this state and elsewhere, are subjected to the tax upon the basis of the combined maximum gross weight declared upon the registration of the vehicle with the Transportation Cabinet and shown on the "cab-identification card" and not upon the basis of the declaration for the issuance of the vehicle license. As so administered, there is no discrimination in the assessment of the tax.

█ If a vehicle is found operating in Kentucky with an actual gross weight which exceeds the weight declared in the registration with the Cabinet, the actual weight as operated becomes the combined maximum gross weight for the purposes of the tax pursuant to K.R.S. 138.655(14) and 601 K.A.R. 9.072E(3).

It is a well-established principle of constitutional law that a statute carries a presumption of constitutionality. The Supreme Court is, when considering the constitutionality of a statute, obligated to give it, if possible, an interpretation which upholds its constitutional validity. *Ratliff v. Fiscal Court of Caldwell County,* Ky., 617 S.W.2d 36 (1981). Where a statute is reasonably susceptible of two constructions, one of which will uphold the validity there-

of, and the other would render it unconstitutional, the court must adopt the construction which sustains the constitutionality of the statute. *Shannon v. Heringer*, 271 Ky. 248, 111 S.W.2d 603 (1937).

As we stated in *Fann v. McGuffey:*

"The responsibility of pronouncing life or death judgment on a piece of legislation so important as this cannot be discharged by any exercise of legal virtuosity. It would be all too easy to tear it down and look brilliant in the execution, but it is the duty of the court to save it if possible, and not to condemn it if there is a reasonable doubt of its constitutionality." *Fann v. McGuffey*, Ky., 534 S.W.2d 770 at 777.

■ We think it reasonable to construe the statute to mean that the declared maximum gross weight for registration purposes as set forth in K.R.S. 138.655(14) means the gross weight declared in the registration of the vehicle with the Transportation Cabinet for purposes of the computation of the weight-distance tax.

■ We note that the General Assembly did not specifically define the term "taxable period" in K.R.S. 138.690. However, K.R.S. 138.685 requires a quarterly tax return to be filed, and it is not unreasonable to construe the statute to mean that the taxable period is a three-month period.

Appellants further contend that K.R.S. 138.660(3) violates the privileges and immunities clause and the commerce clause of the United States Constitution because it discriminates against out-of-state carriers.

In complete *Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), a four-part test was applied to the constitutionality of taxing statutes; to-wit: (1) the tax must be applied to an activity with a substantial nexus within the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state.

There is no question but that the tax in question is applied to an activity with a substantial nexus to Kentucky. It is contended that the tax is not fairly apportioned and discriminates against interstate commerce because it applies for the entire taxable period, although on some trips made during the taxable period the gross weight of the vehicle may not exceed 59,-999 pounds.

■ Highway use taxes are constitutional even though the formula for taxation may not apportion the tax in proportion to road use with mathematical precision. *Capitol Greyhound Lines v. Brice*, 339 U.S. 542, 70 S.Ct. 806, 94 L.Ed. 1053 (1950).

"... But with full appreciation of congenital infirmities of the Maryland formula—and indeed of any formula in this field—as well as of our present rules to test its validity, we are by no means sure that the remedy suggested by appellants would not bring about greater ills. Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for road use. These factors, like those relevant in considering the constitutionality of other state taxes, are so countless that we must be content with 'rough approximation rather than precision.' *Harvester Co. v. Evatt*, 329 U.S. 416, 422–423 [67 S.Ct. 444, 447–448, 91 L.Ed. 390]. Each additional factor adds to administrative burdens of enforcement[7], which fall alike on taxpayers and government. We have recognized that such burdens may be sufficient to justify states in ignoring even such a key factor as mileage, although the result may be a tax which on its face appears to bear with unequal weight upon different carriers. *Aero Transit Co. v. Georgia Comm'n*, 295 U.S. 285, 289 [55 S.Ct. 709, 710, 79 L.Ed. 1439]. Upon this type of reasoning rests our general rule that taxes like that of Maryland here are valid unless the amount is shown to be in excess of fair compensation for the privilege of using state roads. [Footnote 7. One example of the complexities springing from state attempts to weigh numerous factors was the Indiana tax upheld in *Eavey Co. v.*

*Department of Treasury*, 216 Ind. 255, 264, 24 N.E.2d 268, 272, which was '... based upon the carrying capacity, number of wheels per axle, load per axle, size of tires used, weight, and other elements described in the act, all of which bear a direct relation to the hazards of the highways.']"

There is really no contention that the tax imposed by K.R.S. 138.660 is in excess of fair compensation for the privilege of using state roads.

In *Morf v. Bingham*, 298 U.S. 407, 56 S.Ct. 756, 80 L.Ed. 1245 (1936), a flat rate fee on the privilege of using state highways was upheld even though a flat fee is not geared to mileage, weight, or any other proportional use of the highways.

■ Appellants contend that the exemption from the weight-distance and other fuel taxes accorded to motor carriers transporting natural resources under an approved permit (K.R.S. 189.276) discriminates against out-of-state carriers. The trial court expressly excluded from the partial summary judgment any consideration of the constitutionality of this statute. The question of its constitutionality is not controlling in this litigation for the reason that the statute, if not constitutional, could not have any discriminatory effect, and it cannot be held to be constitutional if it is discriminatory. The fact that K.R.S. 189.-276 may be held to be unconstitutional does not affect the constitutionality of K.R.S. 138.660(3).

Appellants further contend that K.R.S. 138.660 constitutes special or local legislation in violation of Section 59 of the Kentucky Constitution because farm trucks are exempt from the tax.

■ There is a natural and a reasonable distinction between vehicles used by farmers to transport products and supplies necessary to a farming operation and to transport the products grown on the farm and the vehicles used by carriers of the class represented by appellants. Motor carriers of the class represented by appellants use the roads of this state as the primary place on which their business is conducted.

The classification of farm trucks as a separate class of motor carriers is a reasonable classification and a legitimate exercise of legislative judgment.

■ K.R.S. 138.660 reflects a recognition by the General Assembly of a need to require those engaged in the business of operating heavily loaded trucks upon the highways of this state to pay a fair share of the cost of the construction and maintenance of highways provided by the state for their use; it is fairly apportioned, is not discriminatory, and it constitutes a reasonable exercise of legislative judgment. We affirm the decision of the trial court that it is constitutional.

## THE AUDIT FEES

K.R.S. 138.661(1), (4), (5) provides:

"(1) Funding for the implementation and administration of the tax levied by KRS 138.660(3) shall be provided from the transportation fund of the department of transportation. The department of transportation shall transfer from the transportation fund to a trust and agency fund account amounts sufficient to provide for the financing of administrative and auditing expenses required in this section in quarterly allotments, the first allotment to be paid on July 1, 1982. The department of transportation shall transfer each quarterly allotment on the first day of that quarter.

. . . .

. . . .

(4) Whenever practicable, and in no event later than three (3) years after any report of taxes is filed, the department shall audit it if such audit is deemed necessary or practicable.

(5) The department shall adopt regulations pursuant to KRS Chapter 13 for the enforcement of KRS 138.655 to 138.725. (Enact. Acts 1982, ch. 265, § 9, effective April 1, 1982.)"

The Transportation Cabinet, pursuant to its authority to adopt regulations adopted 601 K.A.R. 9.072E(15)(7) which provides:

"(7) Any licensee must produce and make available for audit examination at any reasonable time, within or without this state, the records, accounts, papers, reports and other documents under the licensee's control.

(a) When such records are maintained outside this state by licensees engaged in transportation in Kentucky, the licensee shall reimburse the Department for all expenses incurred by the Department in making audits and examinations of such records and accounts at their out of state location.

(b) Records maintained by licensees outside this state may be presented at a designated place in this state for audit and examination. This may be done at the request of the licensee or by direction of the Department. Such records must be presented by a representative of the carrier who can explain all entries and records and be responsible for their safekeeping.

(c) When a motor carrier keeps and maintains its records outside this state, the Department may examine such records and shall be reimbursed by the motor carrier for all expenses incurred in making such out of state examination. The Department shall bill the carrier for transportation, lodging and meals at the rate set by the Kentucky Regulations of Travel Expense.

(d) The refusal by a licensee to produce such records after written demand may result in cancellation of the license and any other penalties applicable by law. Each succeeding day shall constitute a separate violation until the requested records are produced at the place stated in the demand.

(e) In addition to any other penalty authorized by law, the operating authority or license of a person who fails to prepare or maintain records required by statute or regulation of the state shall be subject to suspension or cancellation.

(f) Such records must be preserved for five (5) years."

The appellants contend the regulation exceeds the statutory authority granted to the Transportation Cabinet and that the regulation violates the privileges and immunities clause because it discriminates against out-of-state carriers. We believe the regulation goes beyond the scope of the regulatory authority granted for the Transportation Cabinet by the statute.

The statute very plainly provided that funding for the implementation and *administration* of the tax shall be provided from the transportation fund of the Department of Transportation. It further provides that the Department of Transportation shall transfer to a trust and agency fund amounts sufficient to provide for the financing of administrative and *auditing* expenses in quarterly allotments, the first allotment to be paid on July 1, 1982, and subsequent allotments on the first day of the quarter.

Nowhere is there any indication of an intent of the General Assembly that auditing fees be assessed against the carriers for whom the audit is to be performed. To the contrary, it appears to us that in making provision for the expenses of auditing from allotment from the transportation fund, the General Assembly expressed an intent that the necessary expenses of audit be born by the Transportation Cabinet and not the individual carriers. For that reason the regulation in question is inconsistent with the statute and is invalid, and it is not necessary for us to consider the question of the alleged violation of the privileges and immunities clause of the United States Constitution.

The partial summary judgment considered in 83–SC–572–TG which upheld the constitutionality of K.R.S. 138.660 is affirmed. The judgment considered in 83–SC–694–TG which upheld the validity of 601 K.A.R. 9.072 E(15)(7) concerning assessment of audit fees against carriers whose books are required to be audited

outside the Commonwealth of Kentucky is reversed.

STEPHENS, C.J., and VANCE, AKER, LEIBSON, WINTERSHEIMER, and STEPHENSON, JJ., concur.

GANT, J., not sitting.