RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0275-WC

CHERYL CATES                                                  APPELLANT

|  |  |  |
|---|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>NOS. 2018-CA-1027, 2018-CA-1114<br>WORKERS' COMPENSATION BOARD<br>NO. WC-17-01236 |  |

KROGER; COMMONWEALTH OF                             APPELLEES
KENTUCKY, EX REL. DANIEL CAMERON,
ATTORNEY GENERAL; HONORABLE JEFF
V. LAYSON, ADMINISTRATIVE LAW
JUDGE; AND
WORKERS' COMPENSATION BOARD

AND

2020-SC-0277-WC

RONNIE BEAN                                                APPELLANTS

|  |  |  |
|---|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>NO. 2020-CA-0321<br>WORKERS' COMPENSATION BOARD<br>NO. WC-14-84038 |  |

COLLIER ELECTRICAL SERVICE;                             APPELLEES
COMMONWEALTH OF KENTUCKY EX REL.
DANIEL CAMERON, ATTORNEY GENERAL;
HONORABLE JOHN H. MCCRACKEN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

We consolidated these two workers' compensation appeals to address their common controlling issue: the constitutionality of the 2018 amendment to Kentucky Revised Statute (KRS) 342.730(4), which terminates workers' compensation income benefits when the recipient reaches the age of 70 or four years from the date of injury or last injurious exposure, whichever event occurs last.

Cheryl Cates and Ronnie Bean brought separate appeals in which they argue this amendment is unconstitutional under the state and federal Equal Protection Clauses because it discriminates based on the income-benefits recipient's age. They also argue the statute is unconstitutional special legislation because it applies only to older income-benefits recipients.

In both cases, panels of the Court of Appeals upheld the constitutionality of the statute's age classification on equal protection grounds as being rationally related to a legitimate state interest in preventing workers' compensation income-benefits recipients from receiving duplicate payments in the form of retirement benefits. The panels also rejected the special-legislation challenges to the statute, holding that the statute treated all older income-benefits recipients alike. We agree with the Court of Appeals and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Cates

Cheryl Cates, at age 66, suffered a work-related injury at Kroger on August 15, 2015, for which she filed a workers' compensation claim. On February 8, 2019, Administrative Law Judge (ALJ) Jeff V. Layson awarded Cates permanent-partial disability benefits. Because at the time the ALJ issued this award this Court had invalidated the version of KRS 342.730(4) in effect at the time of Cates's work-related injury,[1] to calculate the duration of Cates's benefits the ALJ applied the prior version of the statute.[2]

Cates and Kroger both appealed the ALJ's decision to the Workers' Compensation Board. While the case was pending before the Board, the General Assembly enacted the 2018 version of KRS 342.730(4), which became effective July 14, 2018. Kroger argued to the Board that the 2018 version should apply to Cates's benefit award. Cates responded that the 2018 version was unconstitutional and otherwise inapplicable to her claim because her claim was governed by the law in effect at the time of her injury. In its decision rendered June 8, 2018, the Board upheld the ALJ's application of the 1994 version of the statute, ruling that the 2018 amendment did not affect Cates's award as it was not effective at the time of Cates's injury and would not be

---

[1] *Parker v. Webster Cnty.y Coal, LLC,* 529 S.W.3d 759 (Ky. 2017).

[2] For clarity, three versions of KRS 342.730(4) are relevant to our discussion of this case: (1) the 1994 version, which was used by the ALJ in ordering Cates's original award, (2) the 1996 version, which had been invalidated by this Court before Cates's initial hearing, and (3) the 2018 amendment, which the Court of Appeals applied, and Cates now argues is unconstitutional.

effective as of the date of rendition of its decision. The Board declined to address Cates's constitutionality argument.

Kroger then appealed to the Court of Appeals, arguing that the 2018 amendment applied to Cates. The Court of Appeals held the appeal in abeyance pending finality of our opinion in *Holcim v. Swinford*[3] in which we held that the 2018 Amendment to KRS 342.740(4) applied retroactively to all pending appeals.[4] Cates then argued that the 2018 amendment was arbitrary and an unconstitutional violation of equal protection guarantees, and due process guarantees.

The Court of Appeals' panel found the 2018 amendment did not create an arbitrary age classification; therefore, it did not violate the federal or state equal protection clauses. The panel also reasoned that because the new statute applied with equal force to an entire class of people, it was not unconstitutional special legislation. Finally, the panel held that the retroactive application was constitutional because Cates had no vested right to benefits other than those allowed under the 2018 amendment to the statute. Because of our decision in *Holcim* and because the panel rejected the constitutional challenges Cates raised, the panel then held the 2018 amendment applicable to

---

[3] 581 S.W.3d 37 (Ky. 2019).

[4] *Id.* at 42. After interpreting the statute's unofficial version, we held that the amendment applied retroactively to all claims where (1) the injury occurred after December 1996 and (2) had not been fully and finally adjudicated, are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of the Act which was July 14, 2018.

Cates and remanded the case to the ALJ to calculate Cates's benefits under the 2018 amendment. The appeal to this Court followed.

Cates argues to this Court the ALJ's original award, which she calculates to allow greater benefits under the 1994 version of the statute than she can receive under the 2018 version, must be reinstated for the same reasons she argued in the Court of Appeals.

### B. Bean

Ronnie Bean filed a workers' compensation claim for a work-related injury he suffered at age 68 while working for Collier Electrical Service. ALJ John H. McCracken heard this claim on July 25, 2018. The ALJ awarded Bean permanent-partial disability benefits and applied the 2018 amendment, which took effect on July 14, 2018. In a petition for reconsideration, Bean argued the ALJ's award was not supported by substantial evidence and application of the 2018 amendment was unconstitutional. Collier argued that the ALJ erred in his calculation of the benefits award. On reconsideration, the ALJ declined to address the constitutionality of the 2018 amendment but amended the calculation of Bean's benefits.

Bean appealed to the Board arguing the unconstitutionality of the amendment and the absence of substantial evidence to support the ALJ's award. The Board declined to address the constitutionality of the statute, affirmed the ALJ's application of the 2018 amendment, and found substantial evidence supported the benefits award.

5

Bean then appealed to the Court of Appeals raising the same issues he argued to the Board. The Court of Appeals panel affirmed the ALJ's award and addressed the constitutionality of KRS 342.730(4), rejecting all constitutional challenges to the 2018 amendment. This appeal followed.

## II. ANALYSIS

### A. This Court's previous rulings on the 1996 version of KRS 342.730(4) and 2018 amendment to the statute.

Before we undertake our analysis, we review for context two of our recent holdings addressing the General Assembly's efforts to establish an outer limit on the receipt of workers' compensation income benefits. In *Parker v. Webster County Coal, LLC*,[5] a majority of this Court invalidated the 1996 version of KRS 342.730(4). That statute read:

> All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs.

The majority in *Parker* found the statute unconstitutional for two reasons: (1) the statute created an arbitrary classification because the benefit cut-off date was dependent upon when the recipient received old-age social security benefits and (2) the statute was special legislation because it favored those who would not receive old-age social security benefits and disfavored those who would receive such benefits.[6] Importantly, even though *Parker* invalidated the

---

[5] *Parker*, 529 S.W.3d 759 (Ky. 2017).

[6] *Id.* at 768, 770.

1996 version of the statute, it reaffirmed this Court's prior precedent in which

we consistently held that treating older injured workers differently from

younger injured workers is rationally related to the legitimate government

interests in preventing a duplication of benefits and saving money for the

workers' compensation system.[7]  We said in *Parker*,

> The rational bases for treating younger and older workers
> differently is (1) it prevents duplication of benefits; and (2) it
> results in savings for the workers compensation system.
> Undoubtedly both of these are rational bases for treating those
> who, based on their age, have qualified for normal Social
> Security retirement benefits differently from those who, based
> on their age, have yet to do so.[8]

Shortly after our holding in *Parker*, the General Assembly in 2018

enacted a new version of KRS 342.730(4) to read:

> All income benefits payable pursuant to this chapter shall
> terminate as of the date upon which the employee reaches
> the age of seventy (70), or four (4) years after the employee's
> injury or last exposure, whichever last occurs. In like
> manner all income benefits payable pursuant to this chapter
> to spouses and dependents shall terminate as of the date
> upon which the employee would have reached age seventy
> (70) or four (4) years after the employee's date of injury or
> date of last exposure, whichever last occurs.[9]

This change purported to rectify the shortcomings of the 1996 version as

identified in *Parker* by untethering the cessation of a claimant's workers'

compensation income benefits from the receipt of old-age social security

---

[7] *Id.* at 768; *see also Keith v. Hopple Plastics*, 178 S.W.3d 463, 468 (Ky. 2005); *McDowell v. Jackson Energy RECC*, 84 S.W.3d 71, 74–76 (Ky. 2002); *Wynn v. Ibold Inc.*, 969 S.W.2d 695, 697 (Ky. 1998).

[8] *Parker*, 529 S.W.3d at 768.

[9] KRS 342.730(4).

retirement benefits, a benefit that *Parker* identified as not available to Kentucky's retired teachers.[10] The new statute now limits the duration of benefits by linking cessation for all income beneficiaries to the later of two events (1) reaching age 70, or (2) four years after injury or last injurious exposure.

In *Holcim v. Swinford*[11] we addressed retroactive application of the 2018 amendment. While not explicitly stated in the statute as codified, we found a clear legislative intent that the amendment apply retroactively to all claims where (1) the injury occurred after December 1997 and (2) has not been fully and finally adjudicated through the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of the Act, July 14, 2018.[12] We declined to address the constitutionality of its effect, or the constitutionality of the amendment's text because those issued were not argued until after the Court of Appeals had rendered its opinion.[13] The cases at hand now present the issue remaining after *Holcim*, which is the constitutionality of the amendment and its retroactive application.

---

[10] *Parker*, 529 S.W.3d at 768.

[11] *Holcim*, 581 S.W.3d 37 (Ky. 2019).

[12] *Id.* at 42.

[13] *Id.* at 44.

**B. The 2018 Amendment to KRS 342.730(4) does not violate the Equal Protection Clause.**

Cates and Bean argue here, as they did to the Court of Appeals, that the statutory provision violates constitutional equal protection principles because one of the terminating events is based on the recipient's attainment of the age of 70. Thus, they argue, the statute treats older injured workers less favorably than younger injured workers.

We begin our analysis by noting that "acts of the legislature carry a strong presumption of constitutionality and that the principle of reducing workers' compensation benefits at an age when workers typically become eligible for alternative forms of income replacement is not new in Kentucky."[14] Doubts regarding constitutionality must be resolved in favor of upholding the law.[15] Rational-basis review is the appropriate standard.[16]

Under the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution, this Court "is to keep[ ] governmental decision makers from treating differently persons who are in all relevant respects alike" while acknowledging that "nearly all legislation differentiates in some manner between different classes of persons."[17] Because

---

[14] *Wynn*, 969 S.W.2d at 696.

[15] *Commonwealth v. Halsell*, 934 S.W.2d 552, 554 (Ky. 1996) ("We are obligated to give [a statute], if possible, an interpretation which upholds its constitutional validity.") (quoting *American Trucking Ass'n v. Commonwealth, Transp. Cabinet*, 676 S.W.2d 785, 789 (Ky. 1984)).

[16] *See Parker* at 767. *See also Ballou v. Enter. Mining Co., LLC*, 512 S.W.3d 724, 728–29 (Ky. 2017).

[17] *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465–66 (Ky. 2011).

9

"[w]orkers' compensation statutes concern matters of social and economic policy" we must uphold the law at issue here if a "rational basis or substantial and justifiable reason supports the classifications that it creates."[18]  In sum, we will uphold the age limitation here so long as it rationally relates to a legitimate state objective.

As in *Parker*, we remain convinced that preventing a duplication of wage-loss protection programs and promoting the solvency of the workers' compensation system are legitimate state interests.  We proceed with a rational basis review of the current statute.  Under the 2018 amendment to KRS 342.730(4), the statute's age-related cut off point is 70.  We find this classification to be rationally related to preventing the state from paying duplicate benefits.  Unlike in *Parke*r, the statute's classification is no longer directly related to old-age social security payments but is only related to all benefit-recipients' ages.  Under the 2018 amendment, all workers' compensation recipients' benefits terminate at age 70 or four years after injury or injurious exposure, regardless of whether the recipients are also entitled to social security benefits.  Because of this change, the fatal flaw identified by the *Parker* majority–the disparate treatment of those who will receive old-age social-security versus those not entitled to social security, for example, teachers–is no longer an issue.[19]  Instead, the statute treats alike all those who receive workers' compensation benefits.

---

[18] *Id.* at 466.

[19] *Id.* ("Thus, a teacher who has not had any outside employment and who suffers a work-related injury will not be subject to the limitation in KRS

10

Cates contends the current statute's classification is no different than the 1996 version struck down by this Court in *Parker*. But we find the 2018 amendment classifies recipients based only on age, entirely unrelated to their old-age social-security eligibility. This age classification prevents a duplication of benefits, which we have found, to be a legitimate state interest and applies to all those receiving workers' compensation equally. So the current version of KRS 342.730(4) is not violative of the Equal Protection Clause because the age classification is rationally related to a legitimate state purpose.

## C. The retroactive application of KRS 342.730(4) does not create an arbitrary classification of litigants.

Bean appears to argue that retroactive application of the 2018 Amendment arbitrarily discriminates against claimants who happened to be actively litigating their claim when the statute became effective. Bean asserts that the General Assembly had no valid reason to apply the amendment prospectively and retroactively to affect all claims not fully adjudicated, making retroactivity an arbitrary legislative act that unfairly discriminates against litigants like him and overlooks claimants who may have been similarly situated but who had fully litigated their claim in the short window of time before the amendment became effective. We disagree.

We have never held that the legislature must articulate a basis for declaring an emergency or a remedial reason for applying a law retroactively.

---

342.730(4) because that teacher will never qualify for Social Security retirement benefits. There is no rational basis for treating all other workers in the Commonwealth differently than teachers.").

11

To Bean's argument, we find a persuasive response to be in the reasoning of the United States Supreme Court, where it stated:

> Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary.
> However, a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.[20]

We find here no arbitrary exercise of legislative authority in the retroactive application of the amendment. After *Parker*, the General Assembly acted swiftly to amend the statute to fill the statutory gap with constitutional norms. The legislature "may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative."[21] Because the 1996 version had been invalidated and a new version enacted, the General Assembly was left to decide if pending claims would be governed by the 1994 version of the statute—a statute that had not been in effect for over 20 years—or to allow for current claims to be decided under the new amendment. The legislative body apparently chose the latter, and that choice was its prerogative.

---

[20] *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267–68 (1994).

[21] *Bank Markazi v. Peterson*, —— U.S. ——, 194 L.Ed.2d 463 (2016).

12

**D. The 2018 Amendment to KRS 342.730(4) does not violate Sections 59 and 60 of the Kentucky Constitution.**

Cates and Bean argue the statute's age classification compels us to find the statute is unconstitutional special legislation.[22]  Cates's and Bean's arguments that the 2018 amendment to KRS 342.730(4) is special legislation parallels their argument that the law violates equal protection.  They argue that the law's classification applies only to older injured persons, thus applying to "particular persons" making the amendment special legislation.  The Court of Appeals disagreed.  The appellate panel found that the statute treats all older workers alike as a class.[23]

In *Calloway County Sheriff's Department. v. Woodall,*[24] we addressed the constitutionality of a workers' compensation statute that disallowed death benefit if the worker's death occurred more than four years after the date of injury.  The statutory text at issue read:

> If the injury causes death, income benefits shall be payable in the amount and to or for the benefit of the persons following, subject to the maximum limits specified in subsections (3) and (4) of this section:
>
> (1) (a) If there is a widow or widower and no children of the deceased, to such widow or widower 50 percent of the average weekly wage of the deceased, during widowhood or widowerhood.
>
> ....
>
> (6) In addition to other benefits as provided by this chapter, if death occurs within four (4) years of the date of injury as a direct

---

[22] Ky. Const. § 59, 60.

[23] *Kroger v. Cates*, 2018-CA-01027-WC, 2018-CA-01144-WC, 2020 WL 2511433 at *4 (Ky. App May 15, 2020).  While the Court of Appeals reached the correct result, its opinion was rendered prior to our September 2020 decision in *Calloway County Sheriff's Department v. Woodall*, 607 S.W.3d 557 (Ky. 2020).

[24] 607 S.W.3d 557 (Ky. 2020).

result of a work-related injury, a lump-sum payment of fifty thousand dollars ($50,000) shall be made to the deceased's estate, from which the cost of burial and cost of transportation of the body to the employee's place of residence shall be paid.[25]

We held that the appropriate test for determining if a law is special legislation "is whether the statute applies to a particular individual, object or locale."[26] We therefore upheld the statute at issue in *Calloway* "for the simple reason that the statute does not apply to a particular individual, object or locale. It applies statewide to all employers and employees."[27]

The statutory text at issue here is no different—it does not identify an individual, object or locale. Cates's and Bean's argument that the statute differentiates between older and younger workers is a *classification* argument, which is properly considered under sections 1, 2, and 3 of the Kentucky Constitution.[28] KRS 342.730(4) is simply not special legislation.

### E. The retroactive application of KRS 342.730(4) does not take away Cates's or Bean's vested right to benefits.

Cates and Bean argue that applying the 2018 amendment is an unconstitutional interference with their vested right to workers' compensation benefits. Cates argues that her rights to compensation vested when she was injured in 2015; therefore, she was entitled to benefits under the version of the statute extant when she was injured, as ALJ Layson ruled. By the time the Court of Appeals addressed this case, the 2018 version was effective, and we

---

[25] *Id.* at 562 (quoting KRS 342.750).

[26] *Id.* at 573.

[27] *Id.*

[28] *Id.*

14

had ruled in *Holcim* that the amendment applied to all pending appeals.[29]  As a result, the Court of Appeals appropriately applied the 2018 version of the statute to Cates's claim.  We have also addressed this argument in a companion opinion, rendered today, *Dowell v. Matthews Contracting.*[30]

Bean similarly argues that the date of his injury controls the version of the law affecting his benefits award.  Bean was injured in 2014, but his hearing before the ALJ, his appeal to the Board, the Court of Appeals, and this Court all occurred after the 2018 Amendment became effective.  So ALJ McCracken, the Board, and the Court of Appeals all found the 2018 amendment applied to Bean's claim.  Specifically, the Court of Appeals reasoned that Bean did not have a vested right to the benefits assigned to him until litigation had been completed.  We agree.

Indeed, the rights of the parties to workers' compensation benefits becomes fixed and vested on the date of the injury.[31]  So, Cates and Bean have a right to file a claim for workers' compensation benefits, a right that vested upon their injury, and that right cannot be taken away from them.[32]  The same vesting principle does not apply to the duration and amount of their income

---

[29] *Holcim*, 581 S.W.3d at 42.

[30] *Dowell v. Matthews Contracting*, 2020-SC-0170-WC.

[31] *Schmidt v. South Cent. Bell*, 340 S.W.3d 591, 594 (Ky. App. 2011).

[32] *City of Paris v. Kentucky Utils. Co,,* 133 S.W.2d. 559, 561 (Ky. 1939) ("[W]here a suit has been instituted under a statute giving a cause of action and a right to maintain such action, and once the action has been prosecuted to final judgment, and the rights of the parties fixed, such rights then become vested in the judgment, and thereafter a legislature can pass no law which impairs the validity of the vested right thus obtained.").

15

benefits, as the date of injury only controls the law entitling a claimant to compensation. "A right, in order to be vested (in the constitutional sense) must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws."[33] Here, Cates and Bean only have an expectation that they will receive benefits of a certain amount and duration. These issues are still being litigated so they will not have a vested right to *certain* benefits until they have received a final judgment in their favor.

Cates and Bean correctly assert that once their right to benefits has been fully litigated procedural due process protects their right to receive those benefits. As the United States Supreme Court explained in *Goldberg v. Kelly*,[34] a person receiving benefits cannot have that right terminated without certain procedural due process requirements being satisfied. But *Goldberg* does not describe the circumstances here because Cates and Bean have not received final judgments guaranteeing them a right to receive benefits. So, instead of looking to the date of injury to decide which version of KRS 342.730(4) applies, we ask only if the claim was pending at a time when the 2018 amendment became effective. Because both Bean's and Cates's claims were not fully adjudicated when the 2018 amendment to KRS 342.730(4) became effective, the amendment governs the duration of the benefits in both cases, as they had and still do not have a vested right to benefits controlled by any other version

---

[33]*Louisville Shopping Ctr. Inc. v. City of St. Matthews*, 635 S.W.2d 307, 313 (Ky. 1982) (citing 16B Am. Jur. 2d Constitutional Laws § 669 (2021)).

[34] 397 U.S. 254, 262 (1970).

of the statute.[35]  Cates and Bean do not have a vested right to *certain* benefits until the amount and duration issues have been fully ascertained through litigation.  Because their claims are being litigated and the statute has been declared retroactive, the 2018 version of KRS 342.730(4) applies to them.[36]

### F. Bean's appeal should be decided on the merits despite a poorly drafted notice of appeal.

Collier makes the additional argument that Bean's appeal should be dismissed because Bean's notice of appeal failed to name the Attorney General as a party in his appeal to this Court.  In *City of Devondale v. Stallings*,[37] we found that failure to name an indispensable party rendered the notice of appeal untimely and required dismissal.  As the dissent points out, *Stallings* requires strict compliance with Kentucky Rule of Civil Procedure (CR) 73.03.  Importantly, though, in that case the governmental entity was never made aware of the appeal.  As stated in *Stallings*, "There are policy considerations that mandate strict compliance with the time limit on filing of the notice of appeal.  Potential parties to an appeal have the right to know within the time

---

[35] *Holcim*, 581 S.W.3d at 42 ("This statute was amended in Section 13 of 2018 Ky. Acts ch. 40 . . . . Subsection (3) of Section 20 of that Act reads, 'Subsection (4) of Section 13 of this Act shall apply prospectively and retroactively to all claims: (a) For which the date of injury or date of last exposure occurred on or after December 12, 1996; and (b) That have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of this Act.'").

[36] *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 396 (Ky. 2021) ("Thus, no matter the context – regardless of whether we are addressing substantive or remedial legislative amendments – when the General Assembly clearly states legislation is to have retroactive effect or otherwise prescribes its temporal scope or reach, we give effect to the intent of the General Assembly.").

[37] 785 S.W.2d. 954 (Ky. 1990).

specified in the rule that they are parties."[38]  Here, as the Court of Appeals

noted in rejecting a similar preservation argument concerning Bean's failure to

raise constitutional claims below and to give notice to the Attorney General, the

Attorney General was properly added as a party in the Court of Appeals and

was listed on the Certificate of Service of the notice of appeal to this Court.  The

Attorney General had notice, has not shown or argued prejudice, and filed a

timely brief.  We find despite strict compliance not being satisfied, the policy

considerations behind the rule are met in this case.

This will not be the first time since *Stallings* that we have chosen to

overlook a party's mistake in naming indispensable parties. In *Lassiter v.

American Express Travel*,[39] where the Kentucky State Budget Director sought to

appeal a circuit court's finding that a statute was unconstitutional, the Budget

Director's notice of appeal named the Commonwealth of Kentucky and the

Kentucky Department of Treasury as defendants.[40]  But, the appeal was

dismissed by the Court of Appeals because the notice failed to name the State

Treasurer, who was an indispensable party.[41]  In contrast, on appeal to this

Court, we found naming the "Department of Treasury" in the caption to be the

functional equivalent of naming the State Treasurer.[42]  We applied *Lassiter* in

---

[38] *Id*. at 957.

[39] 308 S.W.3d. 714 (Ky. 2010).

[40] *Id.*

[41] *Id*. at 716.

[42] *Id.*

*Flick v. Estate of Wittich*,[43] where we found a party substantially complied with CR 73.03 despite their failure to name an indispensable party. *Flick* involved a dispute over an estate, and in the notice of appeal the estate against which judgment was entered was mentioned in the notice, but the co-administrators, the actual parties representing the estate were not.[44] We found that naming the estate was the functional equivalent of naming the co-administrators.[45] The inclusion of the estate's name and sending the co-administrators the notice of appeal allowed this Court to find that Flick substantially complied with the requirements of CR 73.03.[46] Further, in *Sparkman v. Consol Energy, Inc.*[47] we chose again to overlook the strict-compliance requirement for naming indispensable parties. There, Sparkman failed to correctly name the opposing party in the body of the notice but correctly named the party in caption. We found because the caption listed the correct names that Sparkman had substantially complied with CR 73.03 and dismissal of the appeal was not required.[48]

---

[43] 396 S.W.3d 816 (Ky. 2013).

[44] *Id.* at 818.

[45] *Id.* at 820.

[46] *Id.* at 822.

[47] 470 S.W.3d 321, 330-32 (Ky. 2015).

[48] *Id.* at 331 ("While we agree that the variance in party names is both frustrating and confusing, the naming of both Sparkman and Inc. in the caption of the notice was sufficient to give fair notice to the opposing parties, CONSOL and CKI. Because the notice of the cross-appeal was sufficient under our case law and CR 73.03 to confer appellate jurisdiction, the Court of Appeals erroneously dismissed the cross-appeal on that ground.").

We find here that dismissal of Bean's constitutional arguments is not required. The Attorney General was made a party in the Court of Appeals, was listed on the Certificate of Service of the notice of appeal to this Court, has not argued it was prejudiced or lacked notice of the appeal, and was able to file a brief shortly after receiving the notice of appeal. It is true that the Attorney General went unmentioned in the body or caption of the notice of appeal, but we find the more critical factor-receipt of notice to be met here. Therefore, we have chosen to address Bean's constitutional arguments. To be clear, we strongly caution future litigants to be more careful in the future as jurisdictional defects are almost always fatal. But today because the party unmentioned was aware of the arguments raised, received notice, and was not prejudiced we have chosen to look past this flaw.

### III.    CONCLUSION

We affirm the decision of the Court of Appeals in both cases.

All Sitting. Minton, C.J., Conley, Hughes, Lambert, Keller, and VanMeter, JJ., concur. Nickell, J., concurs in part and dissents in part.

NICKELL, J., CONCURRING IN PART AND DISSENTING IN PART: Respectfully, I concur in part and dissent in part. I agree with the majority's analysis regarding the constitutionality of KRS 342.730(4). However, I dissent from so much of the majority opinion as holds Bean's appeal should not be dismissed for failing to name the Attorney General in his notice of appeal.

*Devondale* requires strict compliance with CR 73.03(1) and the failure to name an indispensable party is a jurisdictional defect which cannot be

20

remedied.  *See also Browning v. Preece*, 392 S.W.3d 388, 392 (Ky. 2013).  Here, the Attorney General was clearly not named in the caption nor body of Bean's notice of appeal.  While I appreciate the majority's policy argument, I cannot agree Bean's appeal can be saved.

While the Attorney General may well have been aware of Bean's appeal, the defective notice of appeal did not serve its intended purpose of informing the Attorney General he was a party on appeal.  I believe simply listing a potential party in a certificate of service is insufficient to confer jurisdiction under CR 73.03(1).  Anyone can be listed on the certificate of service to receive a copy of any pleading.  However, mere receipt of a pleading is a large leap from informing a person or entity they are being haled into an appeal as a party.

Further, CR 73.03 cannot be read in a vacuum; it must be read in concert with the rule governing cross-appeals, CR 74.

> In order that the court can determine who is entitled to the additional ten days to cross-appeal allowed by CR 74, the notice of appeal must specify all of the appellees as required by CR 73.03 as amended.  If the notice of appeal designates the appellees in such a way that it is possible to determine who is entitled to prosecute a cross-appeal under CR 74, then it follows that the notice of appeal has satisfied the requirement of CR 73.03 that all appellees be specified.

*Yocom v. Franklin Cnty. Fiscal Ct.*, 545 S.W.2d 296, 297 (Ky. App. 1976).  This Court should not be required to speculate whether attaching a name to the certificate of service was intended to notify that person or entity of their entitlement to prosecute a cross-appeal.

The majority's holding today carves out an exception to an otherwise clear rule which has been consistently applied for over three decades.  In so

21

doing, the majority takes a step toward permitting substantial compliance on jurisdictional defects in the notice of appeal, a standard which is currently permitted for nonjurisdictional defects. *See Ready v. Jamison*, 705 S.W.2d 479, 481-82 (Ky. 1986). The majority's path ignores and eviscerates *Devondale's* longstanding interpretation of CR 73.03(1), seemingly to avoid an admittedly unpleasant result. I cannot join the majority's course because "each time we do not strictly apply the rules we erode them." *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016).

It has well been said that our procedural rules "are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination." *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. 2010) (quoting *Louisville and Jefferson Cnty. Metro. Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977))). For this reason, "[e]nforcement of procedural rules is a judicial responsibility of the highest order because without such rules '[s]ubstantive rights, even of constitutional magnitude, . . . would smother in chaos and could not survive.'" *Id.* (citation omitted). If the majority does not wish to enforce the rule as written, there are established procedures to change CR 73.03 which do not include amendment by judicial fiat.

To justify the departure from established precedent, the majority cites three factually distinguishable cases which make them inapposite. In *American Express Travel Related Svcs. Co., Inc.*, *Flick*, and *Sparkman*, the appellant included at least some portion or version of the name of the appellees

22

in the caption or body of the notice of appeal sufficient to put the opposing party on notice the appeal would be prosecuted against them. Nothing of the sort happened here. Further, I am disinclined to ignore a longstanding rule and well-established legal precedent by the majority's citation to three instances over the past three decades wherein this Court failed to consistently follow its own rules.

Without directly overruling *Devondale,* the majority brushes its precedential value aside to reach a palatable result. Today's decision will either be seen as a result-oriented outlier or it will change the landscape of appellate practice. And not for the better. Before today, the rule was clear and its application all but certain. While procedurally technical, CR 73.03 is nonetheless an integral part of our body of rules effectuating the fair, orderly, efficient, and effective appellate process.

> Rules of procedure such as the one here pertinent are not mere naked technicalities. . . . [R]easonable adherence to clear, reasonable and known rules of procedure is essential to the administration of justice. Justice cannot be administered in chaos. Moreover, the administration of justice involves not only meticulous disposition of the conflicts in one particular case but the expeditious disposition of hundreds of cases. If the courts must stop to inquire where substantial justice on the merits lies every time a litigant refuses or fails to abide the reasonable and known rules of procedure, there will be no administration of justice. Litigants must be required to cooperate in the efficient disposition of their cases.

*United States v. Seigel,* 168 F.2d 143, 146 (D.C. Cir. 1948) (citation omitted).

The majority's abandonment of strict compliance relative to CR 73.03 may result in no prejudice, but this alone cannot justify the departure. An ignored rule is little better than no rule. Avoiding an unappealing result today

23

will create other problems tomorrow—because what is required in one case must be required in all. Laying aside one's personal perspective of the admittedly harsh result in the present case, we must require strict compliance with CR 73.03 as it is currently written and interpreted, pending any change in its edicts. "Unlike the majority, I am unwilling to bend—if not break—our Rules of Civil Procedure and precedent to rectify a clear procedural error made by Appellant's counsel." *James v. James*, 313 S.W.3d 17, 29 (Ky. 2010) (Minton, C.J., dissenting).

For these reasons, I would dismiss Bean's appeal for his failure to name an indispensable party.

COUNSEL FOR APPELLANT,
CHERYL ROBERTS:

Jeffery Allen Roberts

COUNSEL FOR APPELLANT,
RONNIE BEAN:

Geordie Dean Garatt
Houseman, Garatt & Duncan, PLLC.

COUNSEL FOR APPELLEE,
KROGER:

Sharlott Kay Higdon
Whitlow, Roberts, Houston & Straub, PLLC

COUNSEL FOR APPELLEE,
COLLIER ELECTRICAL SERVICE, INC.:

Richard Brent Vasseur
Boswell Sims & Vasseur

COUNSEL FOR APPELLEE COMWEALTH OF KENTUCKY
EX. REL. ATTORNEY GENERAL DANIEL J. CAMERON:

Stephen Chad Meredith
Matthew Franklin Kuhn
Brett Robert Nolan
Office of the Solicitor General
Office of the Attorney General

ADMINISTRATIVE LAW JUDGES:

Hon. Jeffrey Vimont Layson, III
Hon. John Hampton McCracken

WORKERS' COMPENSATION BOARD:
Michael Wayne Alvey